MARY ANN SPRY, Respondent, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Appellant.

73 203
e97 1519

Kansas City Court of Appeals, November 22, 1897, and January 10, 1898.

1. **Passenger Carriers:** RAILWAYS: STATIONS. It is the duty of a railway passenger carrier to provide reasonable accommodations at its stations for the use of passengers who are invited and expected to travel on their lines and is liable for injuries approximately resulting from neglect to provide such accommodations.

2. ———: DAMAGES: DUTY TO LIGHTEN. A passenger upon whom a wrong is committed is under an obligation to lighten the consequential damages as much as he can by the use of ordinary care and diligence, and if he can find shelter where he is wrongfully put off he can not recover for injuries voluntarily incurred in walking to his destination.

3. ———: RESCISSION OF CONTRACT OF CARRIAGE: ACTION FOR DAMAGES DURING LIFE OF CONTRACT. The fact that after the damage has accrued to the passenger by reason of his being wrongfully put off, the contract of carriage is rescinded, will not defeat an action for such damages unless they are released in the contract of rescission.

4. **Trial Practice:** INSTRUCTION: HARMLESS ERROR. Where a modification of appellant's instruction leaves it substantially as asked and substantially covers the theory of the answer, there is no ground of complaint; and if the modification is error, it is harmless.

*Appeal from the Howard Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*Geo. P. B. Jackson* for appellant.

(1) Plaintiff's second instruction authorized a recovery on a theory not set forth in the petition.

*Buffington v. R. R.*, 64 Mo. 246; *Waldhier v. R. R.*, 71 Mo. 514; *Price v. R. R.*, 72 Mo. 414; *Bullene v. Smith*, 73 Mo. 151; *Ely v. R. R.*, 77 Mo. 34; *Melvin v. R. R.*, 89 Mo. 106; *Mfg. Co. v. School Dist.*, 54 Mo. App. 371. It was not warranted by the evidence. No one testified that the Fifth street depot did not afford "shelter and protection from the inclemency of the weather." (2) The plaintiff's first instruction was erroneous. The cancellation of the ticket and return of the fare, for the part of the trip between Sedalia and Nevada, modified the original contract, so that defendant owed no duty beyond carrying plaintiff to Sedalia, and unloading her in safety from its train at a place used for discharging passengers. (3) The court erred in refusing defendant's ninth instruction and in amending and giving it as the court's second instruction. By the amendment the court made the casual relation between defendant's acts or omissions and plaintiff's injuries, and also plaintiff's contributory negligence to depend upon the depot being reasonably comfortable for passengers. This qualified the instruction so that it did not correctly declare the law. (4) The instructions as given by the court were inconsistent and calculated to mislead the jury, for which reason the judgment should be reversed. *Nichols v. Jones*, 32 Mo. App. 657–666; *Martinowsky v. Hannibal*, 35 Mo. App. 70–76; *Frank v. R. R.*, 57 Mo. App. 181–186; *Stone v. Hunt*, 94 Mo. 475–481; *Bluedorn v. R. R.*, 108 Mo. 439–450. (5) Upon the plaintiff's evidence, as well as upon all the evidence in the case, the plaintiff was not entitled to recover. *First.* The defendant was not negligent as charged in the petition. *Second.* The supposed negligence of defendant was not the proximate cause of the injuries and ill health complained of, and defendant's tenth instruction should have been given. *Stepp*

*v. R. R.,* 85 Mo. 229–233; *Harlan v. R. R.,* 65 Mo. 22; *Powell v. R. R.,* 76 Mo. 80; *Mathiasen v. Mayer,* 90 Mo. 585; *Hudson v. R. R.,* 101 Mo. 13–34; *Stanley v. Union Depot Co.,* 114 Mo. 606–624; *Banks v. R. R.,* 40 Mo. App. 458–463; *Hicks v. R. R.,* 46 Mo. App. 304–309; *Reed v. R. R.,* 50 Mo. App. 504–506.   *Third.* Plaintiff's own negligence caused her ill health.

*Sam C. Major, Arline & Dempsey* and *W. M. Williams* for respondent.

(1)   The appellant's complaint of plaintiff's second instruction is not well founded.   (2)   The plaintiff's first instruction was properly given, and the defendant's third was correctly amended by the court. The suit was not based upon defendant's failure to carry the plaintiff through to her destination, but for its wrongful and negligent conduct in not stopping the train at a suitable place, and where there were reasonable accommodations when she was required to leave the cars.   (3)   "The true rule is, that what is the proximate cause of an injury is, ordinarily, a question for the jury.   It is not a question of science or of legal knowledge.   It is to be determined as a fact, in view of the circumstances attending it."   *Scumaker v. R. R.,* 48 N. W. Rep. (Minn.) 559; *R'y v. Kellogg,* 94 U. S. 469.   (4)   The facts found by the jury to be true certainly entitled plaintiff to a verdict.   If the defendant found it necessary, on account of high water, to abandon the trip to Nevada, and to require passengers bound therefor to leave the train, it was the duty of its servants to stop said train at a suitable and proper place for them to alight, and where there were reasonable accommodations.   *Warden v. R'y,* 35 Mo. App. 631; *Evans v. R'y,* 11 Mo. App. 463; *McGee v. R'y,* 92 Mo. 408; Hutchinson on Carriers [2 Ed.],

615; Ray on Negligence of Imposed Duties, p. 147, sec. 49; *R'y v. Mayes*, 15 S. W. Rep. (Tex.) 43; *R'y v. Hartnett*, 34 S. W. Rep. (Tex.) 1057; *R'y v. Smith*, 33 S. W. Rep. (Tex.) 896. (5) The jury properly found under the evidence that the defendant's wrongful and negligent conduct was the proximate cause of plaintiff's exposure and consequent sickness. *R'y v. Biddle*, 34 S. W. Rep. (Ky.) 904; *Evans v. R'y*, 11 Mo. App. 463; *Winkler v. R'y*, 21 Mo. App. 99; *Brown v. R'y*, 11 N. W. Rep. (Wis.) 356; 3 Sutherland on Damages [2 Ed.], p. 2097, sec. 938; *R'y v. Hartnett*, 34 S. W. Rep. (Tex.) 1057.

SMITH, P. J.—This is an action to recover damages for injuries to health occasioned by the negligence of the defendant.

The cause of action alleged in the plaintiff's petition is (omitting matters of mere inducement): "That the defendant carried the plaintiff as a passenger upon its said train to the city of Sedalia, and wrongfully, carelessly and negligently stopped the train about one half mile from the Union depot or station at said city of Sedalia, and which was then used as defendant's depot; and by its servants and agents in charge of said train announced and stated to the passengers thereon that said train would not proceed as far south as the city of Nevada, and then and there wrongfully, carelessly and negligently failed, neglected and refused to cause said train to be moved to the station or depot, but wrongfully, carelessly and negligently directed and required plaintiff to leave said passenger car at a place in the railroad yards, about a half mile distant from the Union depot or shelter, in the midst of various railroad tracks and switches, and surrounded by cars and engines; that said place was filled with mud and water, and that a

PLEADINGS.

violent snow and rain storm was then raging, and that defendant's servants and agents wrongfully, carelessly and negligently, when requiring her to leave said car, failed to give her any directions as to where she should go for shelter from said storm; that she was a stranger and not acquainted in the vicinity where said train stopped, and where she was wrongfully, carelessly and negligently required to leave said car as aforesaid; that the plaintiff was thereby compelled to walk along the railroad tracks in the mud, water and snow to said Union depot, about one half mile distant aforesaid, and to pick her way as best she could along said tracks, and in the midst of said violent storm.

"That in consequence thereof her health has been permanently injured, by reason of which she has sustained damage in the sum of $2,000."

The answer denied the foregoing allegation of the petition and alleged *inter alia* that "while the train upon which the plaintiff had taken passage and was being transported upon said ticket, was in the city of Sedalia, it was discovered that rains which had occurred in unusual and unexpected quantities were causing floods of great magnitude in various places along the line of its railroad. That said railroad crosses the Osage river between Rockville and Nevada, and about the time the said train reached the train dispatcher's office in the city of Sedalia, it was learned that the said Osage river and other streams had risen, and were flowing in such volumes as to endanger the bridges across the same, and so as to render it hazardous for passenger trains to attempt to pass, and thereupon it was determined that the said train would not attempt to cross such dangerous places, and notice was thereupon given to the passengers upon said train that the same would not go farther south than the station of Rockville, and that all passengers destined for points

beyond that station could leave the train at what was known as the Fifth street station in the city of Sedalia, and take another train which would leave Sedalia later in the day and go to Nevada by way of Harrisonville and over a portion of the Missouri Pacific Railway, and thereupon when the said train reached the said Fifth street station the plaintiff alighted therefrom and entered the waiting room at said Fifth street station.

"Further answering, the defendant says that if the plaintiff suffered any injury as alleged in the petition, the same was occasioned by and resulted from her own negligence and voluntary acts contributing directly thereto, after she left the said Fifth street station.

"And further answering, the defendant says that the plaintiff was riding upon said ticket purchased by her husband, S. C. Spry, originally issued for transportation from Franklin Junction to Nevada and return. That the said S. C. Spry was fully authorized to use and dispose of said ticket. And the defendant further states that, as the agent of the plaintiff, the said S. C. Spry caused said ticket to be canceled for all that part between Sedalia and Nevada, thereby limiting the said ticket and the contract evidenced thereby for transportation from Franklin Junction to Sedalia and return, which said contract was fully performed by the defendant and at the time the said ticket was so limited to transportation between Franklin Junction and Sedalia the said S. C. Spry, as the agent of the plaintiff, in consideration of receiving back the said portion of the price of said ticket, canceled all claims of the plaintiff against this defendant on account of the said ticket or the failure to perform the contract as originally evidenced thereby.

"And the defendant further states that the matters complained of by the plaintiff in her said petition all

occurred subsequent to the performance of said contract for transportation to Sedalia.''

There was a trial resulting in judgment for plaintiff. The defendant has appealed.

If the defendant required the plaintiff to leave its passenger train at a place about half a mile from the Union depot in said city of Sedalia and far from any depot or shelter, and the servants of defendant, when requiring plaintiff to leave its car, failed to give her any directions as to where she should go for shelter from the violence of the rain storm, she being unacquainted in the vicinity, whereby she was compelled in the midst of such storm to walk to the said ''Union depot,'' and in consequence of such exposure she contracted a severe cold and the other ailments complained of, it seems to us that she should have recovered.

One of the defenses pleaded by the answer is that the plaintiff left defendant's train at its Fifth street station, and there entered the station house waiting room. The plaintiff's testimony discloses the fact that after leaving defendant's train, after some difficulty, she found her way to the waiting room in the said station, but that she, plaintiff, declined to remain there for the reason, to use the language of her own testimony, ''it was a very dirty and filthy place and all crowded with dirty, greasy things that were piled up in there and taking up a good part of the room and leaving just a small place for us to scrouge in. * * * I would rather stay in the rain and get wet than to stay in that dirty, greasy hole. We could not stay in that dirty hole any longer.'' She, in company with her sister and brother-in-law and three small children, left the said waiting room and went forth through the rain storm a half mile distant to the Union depot. If the defendant's waiting room at the defendant's Fifth street station, where the plain-

tiff left its passenger train, was lighted, heated and arranged and was of sufficient size for the comfortable accommodation of persons leaving the defendant's cars, or about to enter the same for passage, and 'the plaintiff, under such conditions, left the defendant's waiting room and went out into the storm, and in consequence thereof she contracted the ailments already referred to, she should not have recovered, because such ailments were not caused by any negligence of the defendant, but by her own imprudent act. It is the conceded law of this state that it is the duty of railway passenger carriers to provide reasonable accommodations at their stations for the use of passengers who are invited and expected to travel on their lines. But the essence of the plaintiff's complaint is not that the defendant negligently failed to provide reasonable accommodations at "Fifth street," the place where plaintiff left the defendant's train, and that in consequence thereof she was injured, but that the defendant required her to leave said train "a half mile from Union depot and far distant from any depot or shelter." If the defendant had provided a waiting room at Fifth street station of the kind required by the rule which we have just stated, then it is obvious that the plaintiff's action should fail, but if, on the other hand, it had neglected to provide such waiting room at said station, then the plaintiff was not required to remain there during the prevalence of the storm, but was justified in going to Union depot for shelter and accommodations, and to await the departure of the train on which she could take further passage. If the accommodations at the defendant's said Fifth street depot were unreasonable, then, in the eyes of the law, the defendant is in no better situation than if it had provided no accommodation at all. If the defendant had not performed its duty in

PASSENGER carriers: railways: stations.

respect to providing a waiting room in the said station for the accommodation of its passengers, then the plaintiff was justified in leaving the same and going to Union depot.

The proximate cause of the injury in such case would be the act of the defendant in requiring the plaintiff to leave its train at Fifth street, but if the defendant's waiting room at Fifth street depot, as defendant denominates the place where the plaintiff left its train, was reasonably sufficient for the accommodation of persons leaving or entering the defendant's trains there, then the departure of the plaintiff from the said waiting room was not compulsory but voluntary, and was therefore the proximate cause of the plaintiff's ailments. If the plaintiff was required to leave defendant's train under the circumstances alleged in her petition, then she was entitled to recover all the damages naturally and proximately resulting therefrom. But she had no right to inflict injury on herself to enhance the damages. *Corrister v. R'y*, 25 Mo. App. 619; *Francis v. Transfer Co.*, 5 Mo. App. 7; *R. R. v. Berney*, 71 Ill. 392.

In the first of the above cited cases it was said: "One who is wrongfully ejected from a railroad train at a station, a place of safety and comfort, can not by voluntarily leaving such place impose upon the railroad company liability for damages sustained by such course." A person upon whom a wrong has been committed is under an obligation to lighten the consequential damages as much as he can by the use of ordinary care and diligence. If a passenger can find shelter at a place where he is wrongfully put off, he can not recover for the consequences of an exposure voluntarily encountered in walking to his destination. Fetter on Carriers of Passengers, section 120, and the numerous

—: damages: duty to lighten.

cases there cited, illustrating the application of the
rule above stated. If the waiting room provided by
defendant in its Fifth street station house was reason-
ably comfortable and sufficient to afford plaintiff shelter
against exposure to the storm, she can not recover for
the consequences of the exposure voluntarily encoun-
tered in leaving such waiting room and walking to
Union depot. And in a case of this kind it is for the
jury to determine whether the damage was the natural
and proximate or the speculative and remote result of
the negligence. *Dunn v. R'y*, 21 Mo. App. 188;
*Clemens v. R'y*, 53 Mo. 366; Fetter on Car. Pass., sec.
114, and cases cited in foot notes to that section. The
question of negligence, as well as to whether the
damage was the natural and proximate or speculative
and remote result of the negligence, was left to the
jury by appropriate instructions given by the court.

The plaintiff's second instruction told the jury
that if the defendant's train stopped while a heavy
rainstorm was raging and at a place where there were
no reasonable accommodations for the shelter and pro-
tection of passengers from the inclemency of the
weather, although at a place where defendant's trains
usually stopped, and plaintiff was required by defend-
ant to leave the train at that place in the rain and
mud, distant from any reasonable accommodations for
the shelter and comfort of passengers, and that by
reason thereof she was made sick, she should recover.
The defendant contends that this instruction presented
a theory at variance with that of her petition, but by a
reference to the latter already quoted it will be seen
that while differing in verbiage, in theory they are not
substantially different. The jury, to find for plaintiff,
must have concluded from the evidence that the wait-
ing room provided by defendant in its station house at
Fifth street depot was not such as to afford plaintiff rea-

sonable accommodation and shelter from the violence of the raging rainstorm, or, in other words, they must have concluded that in fact and effect there was no waiting room at all in the station, and this they had the right to do if they believed the plaintiff's evidence.

The defendant's second instruction was in harmony with the plaintiff's second, for it in terms told the jury that unless the plaintiff without sufficient cause was compelled by the orders and conduct of defendant's servants in charge of the train upon which she was riding to leave the same in the city of Sedalia at a place far from any station and away from any shelter, and to be exposed unnecessarily and unreasonably to the rain and cold, she could not recover. So that the plaintiff's right to recover was made to turn upon the establishment of the fact whether the defendant had provided at its Fifth street stopping place reasonable accommodation for the comfort of its passengers.

Defendant further objects that there was no evidence that the plaintiff's illness was caused by passing from the train to the waiting room at its Fifth street station, nor that she was required to go to Union depot. As to the first of these objections, it is sufficient to say that the plaintiff's evidence tended to show that she was put off the defendant's train fifty or sixty yards from the station house in the mud and rain and was quite wet before she reached the waiting room therein. If the defendant had provided no such waiting room at its station as was its legal duty to provide, then the plaintiff was compelled to go elsewhere for shelter, and it does not appear that there was any other place known to plaintiff, or more accessible, to which she could go with less exposure than Union depot. Besides this, the plaintiff was told by the defendant's agent in charge of its ticket office there

that she would have to go to Union depot to get a train
to continue her passage, and not only this, but defend-
ant was unable to learn at what time another train on
which she could take passage would leave Union depot.
And in addition to this, the plaintiff's brother-in-law
inquired at the station whether he could get a convey-
ance by which plaintiff and the others of the party
could reach Union depot, and he was told he could
not. It is clear, therefore, that there was evidence
which conduced to show that the plaintiff was com-
pelled to leave the station where she had been put off
of the defendant's train.

Defendant further objects that there was no evi-
dence that Fifth street depot did not afford shelter and
protection from the inclemency of the weather. Even
if the defendant's waiting room did afford shelter and
protection, yet if it was not reasonably comfortable
the plaintiff was justified in leaving it. Such shelter
and protection, to be of any avail, should be reasonable,
and there was evidence to the effect that it was not.
It seems to us that the evidence was ample to authorize
the plaintiff's said second instruction.

The defendant further complains of the action of
the court in giving plaintiff's first instruction which
told the jury that although the plaintiff
—: rescission of
contract of car-
riage: action for
damages during
life of contract.
was required to leave defendant's train at
Sedalia, yet if her ticket was surrendered
and canceled and the fare from Sedalia
to Nevada was returned to her, that this was no defense
to the action. It appears from the evidence that some
twelve days after the plaintiff was required to leave
defendant's train under the circumstances already suffi-
ciently stated, the defendant, at her request, took up
the ticket which she had purchased from Franklin to
Nevada, and returned her the amount paid therefor,
less a certain excursion rate to Sedalia. The plaintiff's

damages had already resulted. There was no release of the same when the surrender and cancellation took place, nor is there any evidence tending to show that it was the intention of the plaintiff at the time of the surrender and cancellation to waive any right that had accrued to her under the agreement evidenced by the ticket. The ticket, so far as the evidence discloses, was no more than a receipt for the passage money, and its office was to serve as a token to enable the persons having charge of the defendant's trains to recognize the bearer as the person who was entitled to ride. Fetter on Car. Pass., sec. 275. It was at most but evidence of the agreement of defendant to transport the holder to place mentioned on its passenger cars for the consideration paid. It was not the agreement for passage; and therefore its surrender and cancellation did not abrogate the agreement or release the damages that had accrued thereunder.

As well suggested by the plaintiff, her suit is not based upon defendant's failure to carry her through to her destination but for its wrongful and negligent conduct in requiring her to leave its train at a place where there was no reasonable accommodations, in consequence of which she was made sick, etc.

If the suit had been on the contract and there had been a rescission, it is quite likely that such rescission would have been a defense. The instruction, we think, was proper.

The court on its own motion gave two instructions, the first of which was but a modification of the defendant's second. The facts hypothesized by it are substantially those pleaded in the first paragraph of the defendant's answer quoted at the outset. It told the jury if they found those facts that the defendant was excused from carrying the plaintiff directly to Nevada on its first train

TRIAL practice: instruction: harmless error.

and that the fact that plaintiff would have had to reach the place of destination by a later train by way of Harrisonville, did not entitle her to recover on the charge of the petition that defendant had negligently failed to convey her to her point of destination. This instruction went further than the answer, but as it is substantially as requested by the defendant, it is difficult to see upon what reasonable ground it can complain of the action of the court in the giving of it. The objection to it, it seems to us, is without force.

The second was a modification of the defendant's ninth and told the jury that if after the plaintiff had alighted from defendant's train and entered the waiting room provided by defendant at said Fifth street station, and *the same was reasonably comfortable for passengers*, and that thereafter she voluntarily left the same and proceeded to the Missouri Pacific depot— Union depot—in Sedalia through the rain and thereby became wet and in consequence thereof, as the immediate cause, suffered the injury complained of, etc. The *italicised* words are those which modify the instruction, and to which the defendant objects. It will be seen that the theory of this instruction as to the modification is similar to that of the plaintiff's second. And what has already been said in respect to the latter is applicable to the former. The instructions taken in their entirety are quite harmonious and consistent in expression and cover every conceivable issue in the case.

As to the objection that the court erred in compelling the witness Davis to testify as to the contents of the supply room in the station, it is sufficient to say that this testimony was harmless. It proved nothing, the one way or the other. If it had been rejected, the result, it is safe to say, would not have been different.

The judgment must be affirmed. All concur.