LAYTHAM, *Appellant*, v. AGNEW.

1.  **Gaming Act:** "POKER:" NO JOINT LIABILITY OF PLAYERS FOR
    MONEY LOST.  In the game of "poker" each party plays for himself.
    Therefore, under the gaming act,' (Wag. Stat., § 1, 660,) if there be
    no conspiracy of two or more to cheat another player and no agree-
    ment to divide the winnings, a joint action cannot be maintained
    against them by the loser to recover the amount of his losses.  The
    action lies only against the winner.

2.  **A Conspiracy cannot** be established upon opinion; it is prova-
    ble only by facts.

3.  **Declarations of a Conspirator** made after the object of the con-
    spiracy has been accomplished, are not admissible against his co-
    conspirators.

*Appeal from Knox Circuit Court.*—HON. JOHN C. ANDERSON,
Judge.

AFFIRMED.

Suit under the gaming act to recover money won from
the plaintiff at a game of "poker" in which he and the
defendants, Agnew, Kelley, Werner and Philips were en-
gaged.

*Hollister & Hollister* and *W. R. McQuoid*, for appellant.

*Wilson & Cover* for respondents.

HENRY, J.—The petition alleged that at a game of
cards called "poker," in which plaintiff and defendants
played, the plaintiff lost and defendants won of him, at
one sitting, $1,289, and that the defendants "conspired
together to defraud the plaintiff and win his money.".

Section 1, page 660, Wagner's Statutes, provides that:
"Any person who shall loose money, or property at any
1. GAMING ACT: game or gambling device, may recover the
"poker:" no joint
liability of play- same by civil action."  The appellant insists
ers for money
lost. that the defendants are jointly liable for the
amount lost by him in the game, whether the conspiracy

alleged existed or not; and instructions embodying that theory, asked by the plaintiff, were refused, while those declaring a contrary doctrine were given for defendants. If there had been any evidence of an agreement between the defendants to divide among themselves whatever might be won from the plaintiff in the game, they would have been jointly liable, although there may have been no conspiracy to cheat and defraud him. There was, however, no evidence to that effect, and the court properly confined the instructions to the case made by the evidence. In the game of " poker " each party plays for himself, as was established by the evidence; and if there be no conspiracy of two or more to cheat another playing in the game, and no agreement to divide between themselves any amount they should win from him, each party in the game is only liable to a loser for the amount of money he may win from him.

*Bristow v. James*, 7 Durn. & E. 257, was an action to recover money from the defendant lost by plaintiff at a game of cards. Defendant pleaded in abatement that " if the sum sued for be due and owing to the plaintiff, the same is jointly due and owing to him from the defendants, one G. R. and G. A. & C.," and it was held on general demurrer to the plea that if the parties named in the plea were jointly liable with defendant, as therein alleged, they should have been joined as defendants, and, also, that under the statute (similar to ours) the action " was on a contract raised by the act." The decision in that case does not sustain the appellant's position that the liability under our statute is a joint one. The statute makes all contracts joint and several which were joint only at common law; but does not make a contract joint which was not so at common law. While the action under the statute may be one *ex contractu*, it is not a consequence that every person playing in a game, whether he loses or wins, is liable with the winner to any one who may lose in the game, nor was it so decided in *Bristow v. James*. If so, one who

had lost more in the game than the party complaining, and one who had not won a dollar of his money, would be liable for the whole amount that the complaining party lost, and the latter would also be liable to him for what he had lost, and each of them to others for what they may have lost, and thus, out of the same game innumerable cross-actions might originate. The statute is not susceptible of a construction so absurd. The second section strengthens the construction we have placed upon the first. It provides that : " The heirs, executors, administrators and creditors of the person losing may have the same remedy against the winner as provided in the preceding section."

The evidence of what one of the defendants said, after the game was played, as to the part his co-defendants took in the game, was properly excluded. When a conspiracy has been proven, what was said by either of the conspirators in the prosecution of the object of the conspiracy is admissible as evidence against his co-conspirators; but what he may state after the accomplishment of the common object is not. *State v. Duncan* 64 Mo. 264, and authorities there cited. His declarations then are evidence against himself only.

The court also properly excluded the following testimony of plaintiff: " I have reason to think that defendants were combined together to get money out of me in that game of cards." Also the following paragraph in the deposition of Davidson: " I believe there was a conspiracy between defendants to get plaintiff into a game of cards." It was not a question in which a witness could give his opinion. He could only testify to facts, and it was for the jury to determine from the facts proved whether a conspiracy existed. The evidence of Homer McBride, in his deposition, detailing a conversation he had with Philips, one of the defendants, in which Philips proposed to McBride to engage in a game of cards with Philips, Werner, Kelly and Laytham, might

2. CONSPIRACY.

have been admitted; but as the fact that all the parties except McBride did engage in the game, was fully proved, and also admitted by the defendants, we cannot see how plaintiff was prejudiced by the exclusion of the testimony. It had not the remotest tendency to prove a conspiracy to cheat the plaintiff in the game.   Philips did not state that the other parties named sent him to McBride, nor is there any other evidence that they, or either of them, requested Philips to get McBride to participate.

The testimony of Philliber, contained in his deposition, was properly excluded.   It was of conversations between witness and Laytham and Agnew, after the money was lost and won, and as to the other defendants Agnew's statements to witness were inadmissible, on the ground that the common object of the conspiracy, if one existed, had been accomplished, and his declarations, therefore, could not be used as evidence against his co-defendants.   What Laytham said to witness was clearly inadmissible.   What Agnew said might have been admitted so far as he was concerned; but it only proved, as to him, that he was in the game and lost money. Those facts were fully established by the testimony.   That he played in the game he admitted, and the fact that he lost money would not have contributed to plaintiff's success in his cause.  We have discovered no error in the record which would warrant a reversal of the judgment, which is, therefore, affirmed.   All concur.

3. DECLARATIONS OF A CONSPIRATOR