| 25a | 41 |
|---|---|
| 97 | 9 |
| 25 | 41 |
| 38 | 78 |
| 38 | 88 |
| 25 | 41 |
| 44 | 362 |
| 25 | 41 |
| 51 | 422 |
| 52 | 5 |

### MARCH TERM, 1887.

SAMUEL WEINSTEIN, Appellant, v. M. W. REID, Respondent.

### St. Louis Court of Appeals, March 8, 1887.

1. ATTACHMENT—FRAUDULENT CONCEALMENT—EVIDENCE.—In attachment, on the ground of the fraudulent concealment of property, a conspiracy to conceal the property having been proved, it is error to exclude statements of a participant in the conspiracy, made while the conspiracy was in progress, although such person is not a party to the record.

2. —— INSTRUCTIONS.—An instruction, from which the jury may infer that they are at liberty to find, from trivial and unimportant circumstances, that the defendant had, prior to the levy of the attachment, fraudulently concealed his property, is properly refused.

3. —— An instruction that fraud is not to be presumed, but must be proved, and that the burden of proof is on the plaintiff, though not incorrect, should be supplemented by the statement that proof of fraud need not be direct, but may be shown by circumstances indicative of a design to hinder, delay, or defraud creditors.

4. —— An instruction to find for the plaintiff, if the jury find that the defendant had formed the purpose to conceal, remove, or dispose of a part of his property, and that such purpose was about to

[41]

be carried out by him when the attachment was sued out, is proper when warranted by the evidence.

5. Evidence—Privileged Communications—Attorney and Client. An attorney can not be compelled to testify as to statements made to him by his client when consulting him professionally, without the client's consent.

6. ———— The client himself, or a third person who was present when the statements were made, can not decline to testify concerning such statements, where they are relevant and material, on the ground that they are privileged.

Appeal from the St. Louis Circuit Court, Daniel Dillon, Judge.

*Reversed and remanded.*

A. Binswanger, for the appellant : In civil, as in criminal cases, fraud may be established by proof of a conspiracy between the defendant and others to defraud ; and it is not necessary that proof of the conspiracy be first established before the admission of declarations of the conspirators, provided such conspiracy be afterwards proved. *Miller v. Barber*, 4 Cent. Law Jour. 177 ; *Sweat v. Rogers*, 6 Heisk. [Tenn.] 118 ; *Page v. Parker*, 40 N. H. 62 ; s. c., 43 N. H. 363 ; *Field v. Liverman*, 17 Mo. 218. Where a question of fraud is involved, much latitude is allowed, and the evidence necessarily must take a wide range and embrace all facts and circumstances which go to show the true character and extent of acts of the parties, and their objects and intentions. *Smalley v. Hale*, 37 Mo. 102 ; *Field v. Liverman*, 17 Mo. 224 ; *Lane v. Kingsberry*, 11 Mo. 410. A third person present at consultation between attorney and client may be compelled to disclose what he heard, and what was said to or by him. Communications or statements made in the presence of such third person are not privileged. *Jackson v. French*, 3 Wend. 337 ; *Railroad v. Yates*, 67 Ala. 164 ; *Perkins v. Guy*, 55 Miss. 153 ; *Gallagher v. Williamson*, 23 Cal. 331 ; *Goddard v. Gardner*, 28 Conn. 172 ; *Hoy v. Mor-*

*ris*, 13 Gray, 519 ; *Hatton v. Robinson*, 14 Pick. 416 ; *People v. Baker*, 22 Cent. Law Jour. 451.   If a debtor forms in his mind a purpose to do any of the things, the doing of which will warrant an attachment, and is about to carry out such purpose at the time an attachment is sued out, the attachment will be sustained.   *Myers v. Farrell*, 47 Miss. 281 ; *Stewart v. Cabanne*, 16 Mo. App. 517 ; *Eisenhardt v. Cabanne*, 16 Mo. App. 531.

J. A. TALTY, for the respondent.

THOMPSON, J., delivered the opinion of the court.

The plaintiff brought an attachment suit against the defendant to collect a merchant's account for $176.75. The grounds of his attachment were :   "That the defendant has fraudulently conveyed or assigned his property or effects, so as to hinder or delay his creditors ; that the defendant has fraudulently concealed, removed, or disposed of his property  or effects, so as to hinder or. delay his creditors ;.that the defendant is about fraudulently to convey or assign his property or effects, so as to hinder or delay his creditors ; that the defendant is about fraudulently to conceal, remove, or dispose of his property or effects, so as to hinder or delay his creditors ; that the debt sued for was fraudulently contracted on the part of the debtor ; that the defendant is about to remove his property or effects out of this state, with the intent to defraud, hinder, or delay his creditors ; that the defendant is about to remove out of this state with the intent to change his domicile."   An affidavit making these charges was sworn to by the plaintiff.   The defendant filed a plea of abatement.   The issue thus made was tried before a jury, and the trial resulted in a verdict for the defendant, and a judgment that the attachment abate.   From this judgment the plaintiff prosecutes this appeal under the statute.

There was no evidence at the trial tending to support any of the allegations of the affidavit, except the

following: "That the defendant has fraudulently removed or disposed of his property or effects, so as to hinder or delay his creditors; that the defendant is about fraudulently to conceal, remove, or dispose of his property or effects, so as to hinder or delay his creditors." But upon these two points there was evidence tending to support the attachment, and some of it was of a cogent nature.

The defendant conducted a clothing, furnishing goods, and boot and shoe business on Franklin avenue, in St. Louis. In the month of December, 1885, he was indebted to various creditors in a sum exceeding sixteen thousand dollars. His assets, at their appraised value, amounted to less than half 'this sum. His creditors began to press him with bills incurred in the purchase of goods, which he was unable to meet. On the thirteenth of December, a fire had broken out in his store, and his goods had been damaged to some extent by fire and water, for which he had collected about three hundred dollars of insurance money. The plaintiff's evidence tended to show that, for a few days prior to the levy of the attachment, the defendant was urging his clerks to sell goods at a sacrifice, although the defendant's own testimony explained this by showing that it was only the damaged goods that he was trying to work off at less than their cost value. For several days prior to the attachment, he deposited no money in the bank, although on one day his sales had amounted to about three hundred and fifty dollars. He claims to have paid out all the money which he took in during these days, except about nineteen dollars (which was on hand when he made the assignment for the benefit of his creditors, which will be hereafter spoken of) in the payment of various small debts, and in the settlement of bills incurred on his family account, and he admits giving money to his wife and daughter. The pages in his sales-book, which should have contained the entries of sales made during the five days preceding the attachment,

were torn out, and the book, thus mutilated, came into the assignee's hands. Of course, no one was able to swear by whom, or for what purpose, these pages were torn out, and the defendant could give no account of it. The defendant had had, for some two years or more, in his employ a salesman by the name of Bart. J. Brennan. The evidence tended to show that, at the time of the fact of which we are about to speak, he was in arrears to Brennan, on account of the salary of the latter, in a sum not less than two hundred and ten dollars, and not more than two hundred and sixty-three dollars, but that he had on deposit in the bank more than two hundred and forty dollars; that Brennan, seeing that creditors and lawyers were calling, and becoming alarmed about the payment of the arrears of wages thus due him, requested payment of the defendant, who tried to put him off with the excuse that he was unable to pay him then, and that the trouble would blow over in a few days. But what was finally done was this: The defendant gave his promissory note to Brennan—not for the sum due Brennan, but for the sum of six hundred dollars, which was more than double the amount due Brennan upon any theory. At the same time the defendant and Brennan figured up what was due the latter, and, as they state in their testimony, found the amount to be two hundred and eighty-six dollars. This, we understand, was on the twenty-first day of December, 1885, the day preceding the levy of this attachment, and the making of the assignment, hereafter spoken of, by the defendant for the benefit of his creditors. In order to figure out this amount as being due Brennan, the defendant allowed him at the rate of eighteen dollars per week after the first of October, 1885, in accordance with a prior understanding, that he would raise his wages at that date from twelve dollars per week to eighteen dollars per week, if business should be good. He, nevertheless, claims to have raised Brennan's wages, although business was not good. In order to figure out this amount,

he also allowed Brennan wages at the rate of eighteen dollars a week down to the end of the month of December, 1885, thus including nine or ten days in advance of any service rendered by Brennan, and this, although Brennan testified that he was working by the week, and not by the month. The only excuse which the defendant and Brennan, testifying as witnesses, were able to make, for the giving and receiving of this note of six hundred dollars, was, that the defendant was about to make an assignment for the benefit of his creditors under the statute, and he desired that Brennan should collect his wages in full, and so he gave him a note for a sum so large that, if Brennan were to prove it up before the assignee for the full amount, the dividend which he would receive would probably amount to what was actually due him.

I. This transaction concerning the note brings us to certain rulings of the court upon the admissibility of evidence. The plaintiff endeavored to show that Brennan took this note, and, having engaged his uncle to go on an attachment bond for him, went to two different lawyers, one of whom represented the plaintiff in this action, for the purpose of seeing about making it the foundation of a suit by attachment against the defendant. The court in the first instance ruled out this testimony, and also the declarations of Brennan made to these lawyers, on the ground that a conspiracy between Brennan and the defendant had not been proved. In this there was no error. In order to make the acts or declarations of a conspirator, made in furtherance of the common design, evidence against his co-conspirator, it must, regularly, first be made to appear that a conspiracy existed, and that the acts and declarations were made in furtherance of the conspiracy which was formed, and while it was *in fieri*. While there is authority to the effect that the trial court may, in the exercise of a sound discretion, allow evidence of the acts and declarations of a supposed conspirator to go to the jury, before

evidence *prima facie* showing the fact of the conspiracy has been given, subject to be withdrawn from the jury by an instruction, in case such foundation is not afterwards laid (*Sweat v. Rogers*, 6 Heisk. 118; *Miller v. Barber*, 4 Cent. Law Jour. 177), yet no authority is cited to us, and none is believed to exist, which holds that it is, under any circumstances, *error* for the court to exclude evidence of the acts or declarations of the supposed conspirator, before evidence has been given from which the jury would be authorized to find the fact of the conspiracy to be established.

II. But, after the fact of the giving of the note by the defendant to Brennan, and of the indebtedness of the defendant to Brennan, had been shown, and after the excuses of the defendant and Brennan had been made, the court still persisted in the ruling that the plaintiff could not be allowed to show that Brennan had gone with his uncle to a lawyer's office, and had taken counsel on the subject of suing out an attachment upon this note against the defendant. In this we are clear that the court erred (*Page v. Parker*, 40 N. H. 62, and 43 N. H. 363), unless the ruling of the court can be justified upon another ground, which will now be stated.

III. This ground was, that the evidence called for the narration of a privileged communication between attorney and client. In this we also think the learned judge committed error. The rule which excludes privileged communications between an attorney and his client applies only where it is sought to elicit the communication from the attorney, without the consent of his client, and then it is a privilege—not of the attorney, but of the client, which the client may waive. In this case, one of the attorneys testified as a witness, and, so far as the court ruled that he could not testify as to any communication made to him by Brennan when consulting him in a professional capacity, since it was not made to appear that any third person was present, the court may have been correct, and we do not understand

that the ruling is complained of. But what is com-
plained of is, that when it was sought to elicit such dec-
larations from the client himself (from Brennan) on his
cross-examination—he having been called as a witness
by the defendant—the court excluded the evidence on
the ground of privilege. In this we are quite clear that
the court mistook the scope of the rule. There is noth-
ing so sacred in the relation of attorney and client, if the
client has· applied for the assistance of an attorney in
carrying out an unlawful or fraudulent scheme, as will
prevent the client from being compelled, as a witness, to
disclose what he said to the attorney, or did in his pres-
ence, in furtherance of the scheme. *Woburn v. Hen-
shaw*, 101 Mass. 193, 200. It is doubtful whether, in any
view of the relation which Brennan is shown to have
had to these attorneys, the communications are to be re-
garded as confidential. The case very much resembles
that of *Hatton v. Robinson* (14 Pick. 416), where it is
held that communications made to an attorney, by a
person who applied to him to make a conveyance or mort-
gage of his personal property, for the purpose of pre-
venting it from being attached by a number of his
creditors, were not within the privilege. It is also
within the intimation of doctrine given by Best, C. J.,
in *Broad v. Pitt* (3 Carr. & P. 519): "A man is not act-
ing as an attorney, when he is consulted about a deed ;
and I can not distinguish his situation from that of any
other man." If either of the attorneys to whom Bren-
nan went had accepted an employment from Brennan,
and had thereby become possessed of any of the secrets
of Brennan, they would not have been allowed, under
the rule, to disclose such secrets.

IV. The plaintiff offered to prove the same declara-
tions by Hugh Brennan, the uncle of Bart. J. Brennan,
but the court, on the objection of the defendant, ruled
out this evidence. If this evidence was ruled out on the
ground that it was an effort to develop confidential
communications between an attorney and client, the

ruling was erroneous, for the reason already stated. The privilege extends only to the case where it is sought to prove the declarations by the attorney himself, or by some one in privity with him, as his interpreter or his clerk; and a person in no way connected with him, present at the making of the communication, is bound to testify to the fact. *Jackson v. French*, 3 Wend. 37; *Hoy v. Morris*, 13 Gray, 519; *Goddard v. Gardner*, 28 Conn. 172; *People v. Barker*, [S. C. Mich.] N. W. Rep. 539. Nor does the rule apply to communications openly made or disclosed in the presence of third persons, even where it is sought to elicit them from the attorney. *Railroad v. Yeates*, 67 Ala. 164; *Gallagher v. Williamson*, 23 Cal. 331. If the testimony was excluded on the ground that a conspiracy between Bart. J. Brennan and the defendant had not been established, then whatever may be said of the ruling, when it was first made at an early stage of the trial, we are clear that it was erroneous when the witness, Hugh Brennan, was recalled and interrogated upon the same matter near the close of the evidence.

V. Throughout the trial the court appears to have ruled against the plaintiff on questions of evidence with considerable stringency. We think that the record fairly calls for an observation which this court and the supreme court have made in former cases; that, in actions where fraud is the subject of the inquiry, greater latitude is to be allowed in respect of what is to be deemed a part of the *res gestae* than in ordinary cases. *The State to use v. Excelsior Distilling Co.*, 20 Mo. App. 21; *Field v. Liverman*, 17 Mo. 218; *Smalley v. Hale*, 37 Mo. 102; *Lane v. Kingsberry*, 11 Mo. 402, 410.

VI. Complaint is made that the court refused the following instruction offered by the plaintiff:

"9. The jury are instructed, that if they find by any number or variety of circumstances testified to in this case, although the same are trivial and unimpor-

tant, that the defendant, prior to the levying of the attachment, had fraudulently concealed, removed, or disposed of his property or effects, or any part thereof, so as to hinder or delay his creditors, or that he had fraudulently conveyed or assigned his property or effects, so as to hinder or delay his creditors, they will find for the plaintiff."

We are clear that the court committed no error in this ruling. The first part of the instruction is drawn from the *dictum* of Sherwood, J., in *Burgert v. Borchert* (59 Mo. 83), and although quite true and quite appropriate in a judicial opinion, it is not appropriate in an instruction given to a jury. The reason is, that it is in the nature of an instruction upon the weight of evidence, and that its language might have misled them into the conclusion that they were at liberty to find, from trivial and unimportant circumstances, that the defendant had fraudulently concealed, removed, or disposed of his property prior to the levy of the attachment. There are many cases where the *dicta* of text writers and of judges in their opinions, although correct in point of law, would be misleading if embodied in instructions given to juries.

The court, at the request of the defendant, instructed the jury among other things, that, "fraud is not to be presumed in any case, but must be proved, and that the burden of proving the fraud charged in this case is upon the plaintiff." This instruction was correct in point of law and was properly given. But it would have been better, as suggested by Sherwood, J., in *Burgert v. Borchert* (*supra*), if the instruction had gone further and informed the jury that the requisite proof of fraud need not be of a direct or positive character, but that the conclusion of fraud might be gathered from the surrounding circumstances indicative of a design to hinder, delay, or defraud creditors.

VII. The court refused to give the following instruction tendered by the plaintiff:

"10. The court instructs the jury, that if they believe from the evidence that at the time the attachment was sued out in this case, the defendant had formed a purpose in his own mind to conceal, remove, or dispose of, or cover up his money or property, or any of it, with the intent to prevent the plaintiff, or any of the other creditors of the defendant, from reaching it, or applying it to the payment of their just claims against the defendant, and that such purpose was about to be carried out by him when the attachment was sued out, the jury will find for the plaintiff against the defendant."

We do not see that this instruction was covered by any instruction given by the court, in so far as it told the jury to find for the plaintiff if they should find that the defendant had formed the purpose to conceal, remove, dispose of, or cover up a *part* of his money or property, and that such purpose was about to be carried out by him when the attachment was sued out. The law is, that the effects of a debtor will be subject to attachment if he convey or conceal, or if he is about to convey or conceal, any part of his property, with the fraudulent intent of hindering or delaying his creditors. *Taylor v. Meyers*, 34 Mo. 81. In the state of the evidence in this case, an instruction upon this point of law was very material. Aside from the uses which the defendant may have made of the moneys which he had taken in through the sale of goods during, say five days, preceding the attachment, and aside from the giving of the six hundred dollar note to Brennan, there was nothing developed in the evidence casting any imputation upon his doings, in respect of his property, prior to the assignment, which he made for the benefit of his creditors on December 22, the same day on which the plaintiff's attachment was levied. It is true that, just before the assignment, Brennan was allowed to surrender the six hundred dollar note, which was thereupon destroyed, and to take out of the store, in full payment of his claim,

goods of the cash value thereof; but it does not appear that these goods were more than the value of Brennan's claim, and Brennan claims to have realized from them, by a sale at auction, but two hundred dollars, and there is no evidence to the contrary. This appears to be less than the amount due him by the defendant. In all other matters it is just to the defendant to say, that his conduct was much more exemplary than that which usually characterizes merchants in such embarrassing circumstances. He declined to prefer any other creditor, with a single exception, and to that creditor he owed a small amount merely—declined even to prefer his brother, who had loaned him money and supported him with his endorsement—but made an assignment for the equal benefit of his creditors under the statute, even forgetting to reserve to himself the benefit of his statutory exemptions. If the evidence which the plaintiff has given be stated for the most that it will prove against the defendant, it goes to show that, pressed by a number of creditors, one of whom was then threatening to close him up before he had done anything which justified such a threat, except the failure to pay a bill, which he alleges was not then due, and seeing that his business was about to be broken up, and that poverty was staring him in the face, he did what may, if carried out, have amounted to the concealment of some very small fraction of his assets. But this, if true, justified the levying of the attachment; for he might have done a great deal more in the same direction if the creditors had not promptly attached. But, as the evidence may have fairly warranted the jury in finding that he was attempting fraudulently to conceal some small portion of his assets, the plaintiff was entitled to an instruction to the effect that such a fact, if found by the jury, would justify his attachment. As this instruction seems to be unexceptionable, and as the same matter was not elsewhere communicated to the jury, the refusal of it was error.

Other objections were taken to instructions given, but we do not see in them any error or prejudice.

It is proper to notice another ruling, which, although not a ground of exception on this record, may become important on another trial. A witness examined for the plaintiff testified that he was present and heard the defendant give his deposition, which was taken down by a stenographer. He was then asked what the defendant testified to on certain points. Upon the defendant's objection, the court refused to permit him so to state, until the stenographer had been called and had testified that the shorthand notes of the testimony had been destroyed. This was error. In the absence of a statute attaching some special value to the testimony of a shorthand writer, there is no rule of evidence which makes such evidence of what a witness has testified to the best evidence, in the sense which will exclude the oral testimony of another witness to the same fact. The ordinary presumption would, indeed, be that the notes of the short-hand writer would furnish a more accurate recital of the testimony ; but, of course, this would depend upon the accuracy of the stenographer ; and there are certain cases within common experience in which the recollection of a witness of good understanding and memory, as to what the previous witness has testified to, would be more worthy of credit than the notes furnished by some who endeavor to discharge the duties of court and notarial stenographers. It is, however, sufficient to suggest that there is no rule of evidence which excludes the testimony of one witness, from memory, to a fact, merely because some other persons may be supposed to have preserved a written memorandum of the fact. *Austin v. Boyd*, 23 Mo. App. 317. The stenographer's notes were not a deposition, subscribed and sworn to by the witness.

For the reasons above given, the judgment will be reversed and the cause remanded. It is so ordered.