DICEY HARLESS, by Next Friend, Respondent, v. SOUTHWEST MISSOURI ELECTRIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 4, 1907.

1. DAMAGES: Negligence: Personal Injury: Mental Suffering. Where in actions for mere negligence there is no bodily injury there can be no recovery for mental anguish and fright; but where there is offensive, insulting and humiliating conduct, such elements enter into the measure of damages.

2. ———: ———: ———: ———: Interurban Railways. An interurban railway received a six-year-old girl on a car with directions where to leave her and with the expectation that she had money to pay her fare. The latter she did not have and at the edge of the village she was put off the car on a cold evening. She was then picked up by a returning car and by the assistance of passengers finally reached her destination. Held, the conduct was inhuman and warranted the recovery of damages, although there was no bodily injury sustained save the suffering from cold. Cases considered and distinguished.

3. ———: ———: ———: ———: ———: Instructions. Certain instructions are examined and held not to be objectionable.

4. ———: ———: ———: ———: ———: ———. The jury are not compelled to give exemplary damages though instructed they may do so, and even the circumstances would justify it; and the fact that they do not grant exemplary damages does not show that the defendant's conduct was not inhuman.

5. TRIAL PRACTICE: Bill of Exceptions: Affidavit. The bill of exceptions is a part of the record and vouches absolutely for what took place at the trial, and anything outside of that cannot be considered as verity. It may show the affidavits were filed but it does not vouch for the truth of the matters contained therein.

6. ———: ———: Misconduct of Counsel. Certain conduct of counsel in his argument to the jury set out in the bill of exceptions is reviewed and the ruling of the trial court thereon is sustained.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs, Judge.*

AFFIRMED.

*McReynolds & Halliburton* for appellant.

(1) Plaintiff was not a passenger and defendant's employees had the right to put her off, having gotten on the car without any money to pay her fare and without intention of paying fare. In Holt v. Railroad, 174 Mo. 529, it is said: "A passenger is one who enters the vehicle of a carrier with the intention of paying in money the usual fare for his transportation, or who is supplied with a ticket or pass, entitling him to ride to a given point." Woods v. Railroad, 48 Mo. App. 333; Reynolds v. Transit Co., 88 S. W. 50; O'Donnell v. Railroad, 95 S. W. 198. (2) The plaintiff not offering to pay fare and not being a passenger defendant had the right to put her off at any usual stopping place, or near any dwelling house, as the conductor should elect on stopping the car, using no unnecessary force. R. S. 1899, sec. 1074. (3) The defendant only owed plaintiff ordinary care not to injure her in any way. And the evidence showing conductor used ordinary care and that she was not in any way injured in putting her off, no negligence being shown on the part of defendant, plaintiff was not entitled to recover. Raming v. Railroad, 157 Mo. 477; Padgett v. Moll, 159 Mo. 143. (4) Plaintiff was not entitled to recover for fright or for sickness brought on by fright at being put off at the time and place she was. Rawlings v. Railroad, 97 Mo. App. 515; Strange v. Railroad, 61 Mo. App. 587; Deming v. Railroad, 80 Mo. App. 152; Snyder v. Railroad, 85 Mo. App. 495; Mitchell v. Railroad, 34 L. R. A. 781. (5) Plaintiff's first instruction is erroneous and should have been refused because it assumes plaintiff was a passenger entitled to be carried from Galena to Joplin and gives her a right of recovery on grounds that are not tenable under the law. Lehnick v. Railroad, 94 S. W.

996. (6) Plaintiff's second instruction is error and should have been refused because there is no evidence of oppression or wantonness on the part of the conductor and because the Missouri courts do not recognize any such thing as gross or reckless carelessness. See thorities above. (7) There is nothing in the evidence to show malice, insult or inhumanity on the part of the conductor, the most that can be said against his action is that he used poor judgment. And the jury found that the conductor's act in putting plaintiff off was not wanton, malicious or committed in reckless disregard of plaintiff's rights. Instruction numbered 4 was error. There was no evidence upon which to base it. Dorsey v. Railroad, 83 Mo. App. 528; Wamsganz v. Wolff, 86 Mo. App. 205; State v. Jungling, 116 Mo. 162. (8) Plaintiff's instructions as to the measure of damages is error. Her first instruction submits the case on the negligence of defendant's conductor. (9) The court should have granted a new trial on account of improper remarks of plaintiff's counsel, E. O. Brown, in attacks on defendant's witnesses and appeals to the passions and prejudices of the jury to which objection was made at the time and overruled by the court. Thompson v. Bernays, 85 Mo. App. 575; Wendler v. Furnishing Co., 165 Mo. 527.

*E. O. Brown* and *R. G. Blair* for respondent.

(1) In all cases where it is held that no recovery is permissible for mental anguish or fright, it was where the tort alleged was negligence. But it is uniformly held that where act was willful, malicious or so grossly negligent as to raise the presumption that the conductor was indifferent to consequences or accompanied with circumstances of inhumanity or oppression, an action lies for mental anguish whether physical harm was done or not. Hickey v. Welch, 91 Mo. App. 4. This case is squarely in point. To the same effect is Spangler v.

Railroad, 108 Mo. App. 329. (3) The act of the conductor in expelling plaintiff at the time, place and under the circumstances, was not only wanton, inhuman and oppressive but showed such a reckless disregard for the safety and welfare of one too young to be able to care for herself as to raise the presumption that he was utterly indifferent to consequences. Spangler v. Railroad, 108 Mo. App. 329; 5 Am. and Eng. Ency. Law (2 Ed.), 599, 607; Guy v. Railroad, 30 Hun (N. Y.) 399; Railroad v. Sullivan, 81 Ky. 624, 50 Am. Rep. 186; Krueger v. Railroad, 84 Mo. App. 470; Railroad v. West, 125 Ill. 320; Railroad v. Long, 1 Am. Neg. Rep. 437; Spry v. Railroad, 73 Mo. App. 203; 3 Thompson, Neg., secs. 3291, 3292, 3293. (4) Although cause may have existed for plaintiff's ejection, yet, having been put off at an improper time and place, the defendant is liable for the resulting injury. 5 Am. and Eng. Ency. Law (2 Ed.), p. 701; Railroad v. Norris, 1 Am. Neg. Rep. 579; Sanford v. Railroad, 33 N. Y. 343; Hudson v. Railroad, 178 Mass. 64; Clarke's Accident Law of Street Railways (2 Ed.), sec. 78; Spangler v. Railroad, 108 Mo. App. 329; Hickey v. Welch, 91 Mo. App. 4; 3 Thompson, Neg., secs. 3288, 3291, 3292, 3293, 3294, 3295; Railroad v. Spirk, 2 Am. Neg. Rep. 404. (5) The statement made by plaintiff's attorney in his argument to the jury was a mere rhetorical flourish, and did not overstep the bounds of proper argument. No prejudicial error appears which will authorize a reversal of the judgment on this ground. Huckshold v. Railroad, 90 Mo. 644; West v. Railroad, 187 Mo. 366; State v. Cummings, 189 Mo. 644; Schuette v. Railroad, 108 Mo. App. 25; State v. Thornton, 108 Mo. 640; State v. Turner, 76 Mo. 360; McCarty v. Railroad, 192 Mo. 401; State v. Fitzgerald, 130 Mo. 407.

ELLISON, J.—This action is to recover damages from the defendant. The plaintiff prevailed in the trial court.

It appears that defendant is an electric railway which is operated through and between cities, towns and villages in southwest Missouri and over the state line into Kansas. It answers to the purpose of a street railway in the cities, towns and villages and a suburban railway between them. Plaintiff was a small child six years of age and her cousin, a young woman, put her on one of defendant's cars (in charge of the conductor) at Ninth and Mineral streets in Galena, a town in Kansas near the state line. This young lady told the conductor to put the child on a connecting car in Joplin, Missouri, for Smelter Hill in Joplin and pinned a memoranda to that effect on to her dress. This was between three and four o'clock in the afternoon of January 29th, a very cold day, the thermometer, according to plaintiff's witnesses, being about ten degrees above zero, with a cold wind blowing and ice and snow on the ground. It seems that the young woman thought the child had a five-cent piece, the amount which would be due as her fare, but in point of fact, she did not have it. On proceeding to the outskirts of Galena, where houses were few and none were occupied for the distance of a block or more, the conductor put her off the car and left her by the side of the track. He said that after he started on he looked back and saw the child following after the car instead of going back in the direction of where she was put aboard. He went on to a passing point (not a very great distance) for cars going in opposite directions and there told the conductor of the car going west, that "if he saw her he had better pick her up and take her back to Ninth street." The westbound car met her and took her aboard. She seemed very cold and much frightened and two women passengers took her in charge. They got off with her at Twelfth street and took her into a meat market. One of them testified: "When they took her on the car she seemed to be cold and very much frightened. It was a cold day. I saw her condition and went

up to her asking permission of the conductor to take her back with me, thinking perhaps I could console her and asked her name. She tried to stammer her name to me, but was in a very frightened condition not seeming capable of telling me anything. I didn't find out who she was until we got off the car at Twelfth street. I got off with the intention of taking her to my home, then finding out where she belonged. When we stepped into the store she gave me a note that told her name, Dicey Harless, and told where she wanted to go. There was a gentleman standing there who said he was going to Joplin. I gave him the note and asked him if he would take the little girl over. He said he would. He didn't know her parents. He took the little girl in charge and that is all I saw of her. It was cold that day. There was patches of snow over the ground. I think it had snowed that morning, but don't remember. The wind was blowing some. I don't know whether the ground was frozen or not, I know there was snow over the country."

This man was John Henley and he testified that he lived in Joplin; he said: "A couple of young ladies and a little girl got off (the car) and came in (the meat market). This young lady turned the little girl over to me and I told her I would bring her home on the car. Which I did. The little girl was crying and cold when she was brought into the shop. She couldn't give any coherent account of herself but had a note telling where to take her. It told where the little girl lived. I brought her over to Joplin. No cars run on C street. I didn't know she lived so far out. The little girl was crying with cold so I took off my coat and put it around her. I had left my overcoat at home and had a dress coat on. I went in my shirt sleeves. I have seen her since, it is Dicey Harless. I volunteered to take her home, and brought her over to Fourth and Main, then walked from there to Smelter Hill. We weren't very long going from

Fourth and Main to Smelter Hill. I carried her part of the way and trotted along. It was something over a mile. I just took her to Smelter Hill not to where she lived and turned her over to her father. We met him on Smelter Hill. When we got to Smelter Hill — I kept asking her, I went straight to C street — 'Well, do you live here?' 'No.' And I just went on out to see and kept going till I got to Garfield schoolhouse, and she says, 'Now I live down there, I can run on home by myself.' I said, 'No, I will take you on home.' We went to the nearest house and I said, 'Do you live there?' She said, 'No, no, I live up here,' and after I had taken her on up there and came to Smelter Hill, her father came in from the other side of the street and she said, 'I want to go to Papa.' I asked, 'where is your papa?' 'Right over there.' I then took her across and gave her to him. He took her into the drugstore and warmed her up."

The instructions for plaintiff permitted a recovery for fright, mental suffering and anguish. The defendant assails the propriety of such instructions on the ground that where there is no bodily hurt mental anguish and fright are not elements of damage. That is the law in cases of mere negligence. [Connell v. Western Union Tel. Co., 116 Mo. 34; Trigg v. Railway, 74 Mo. 147.] But in cases where the wrongful act is accompanied by offensive, insulting and humiliating conduct, or where the act itself is willful and *inhuman*, such elements enter into the damages which may be recovered. [Smith v. Railway, 122 Mo. App. 85, 97 S. W. 1007; Glover v. Railway, — Mo. App. —; Hickey v. Welch, 91 Mo. App. 4; Spry v. Railway, 73 Mo. App. 203.] This rule is especially recognized by the Supreme Court in the cases above cited.

The question remains, whether the conduct of the conductor was inhuman in the circumstances developed by the evidence. The first of these circumstances is that

the plaintiff was not a passenger and therefore was not entitled to consideration from the standpoint of a passenger.  She had no money with which to pay her fare; and though received by the conductor, it must, in fairness, be presumed that he so received her on the assumption that she was provided with money to pay for her carriage.  It is not neecssary to stop for comment on the thoughtlessness of the young lady who put so small a child on a car, without knowing she was provided with money to pay her way.  But, being on the car wrongfully, and though, notwithstanding her tender years, we charge her with responsibility for that wrong, yet, on considerations which arise outside the relations of carrier and passenger, she was entitled to humane treatment.  There are certain acts where circumstances must determine their character.  It would not have been inhuman, nor even improper, to have put off a person of mature years at the place where plaintiff was left, who was aboard the car wrongfully.  But plaintiff was not of an age to care for herself.  She was tender in body as well as mind and consequently easily made to suffer with cold and to be distressed, confused and terrorized.  To a little girl of that age, an unfamiliar house, even though no more than three or four hundred feet away, was a long distance off; and who is it with capacity sufficient to be a conductor, who should not have known that the strange place, the cold wind and bleak day would frighten and perhaps freeze so small a child.  We cannot, and do not, suppose that he affirmatively wanted to injure the plaintiff, but we must judge of the character of his act, by the act itself, and so judged, it shows him to have been so wholly indifferent to the result of his conduct as to characterize it as willful and malicious as those terms are known to the law.  We therefore hold that notwithstanding no bodily harm was inflicted in putting plaintiff off of the car, yet she was entitled

to have her fright, mental suffering and anguish, considered as elements of damage.

The cases cited by defendant we do not think apply to the facts of this case. In Strange v. Railway, 61 Mo. App. 586, the evidence merely shows that on an afternoon in August the plaintiff, a passenger fourteen years old, was carelessly carried by her station a mile and a quarter, when the train was stopped and she was invited to alight by the conductor who pointed out the station. She claimed to have been frightened by fear that she might meet tramps, or someone else. The circumstances of that case were not thought to disclose conduct which could be called inhuman. So in Deming v. Railway, 80 Mo. App. 152, the court evidently did not consider that the careless act of carrying the plaintiff, a woman passenger, one-half mile beyond her station and there putting her off in the dark, was inhuman or malicious; for these elements are recognized in the opinion (p. 158) as being exceptions to the rule there stated. The same may be said of Snyder v. Railway, 85 Mo. App. 495. In Rawlings v. Railway, 97 Mo. App. 515, a boy four years old accompanied by his older sister twelve years old, was carelessly carried by their station a distance two hundred and fifty yards and there put off in daylight, though it was getting late. But it appears to have been specially found (p. 517) that there was no element of inhumanity in the case. It is readily seen that neither of these cases is applicable to the facts and circumstances of the case in hand.

From the standpoint of her rights, as we herein determine them, we do not believe the instructions, considered as a whole, are subject to criticism. The first one for plaintiff does not assume plaintiff was a passenger. It does assume that the conductor received her on board "for the purpose of transporting her," and he did, though he afterwards discovered she was not entitled to be classed as a passenger. If the expression, "gross and

reckless carelessness," was incorrect, it was favorable to defendant in requiring that high degree of carelessness to make it liable.

In one of plaintiff's instructions the court informed the jury that if the conductor's act was wanton and malicious and committed in willful disregard of plaintiff's rights, it would "justify" exemplary damages. Such damages were not allowed, and hence the defendant draws the conclusion that the jury found there was no wanton and malicious conduct and willful disregard of consequences on the part of the conductor. We think the conclusion drawn does not follow. It is true the jury did not find for exemplary damages when they might have done so. They were not required absolutely to so find and they concluded they would not. But under the first instruction they must have found the act was willful and malicious, as those words are known to the law, and that it was an act of inhumanity. For, while those words are not used in the instruction, yet such state of case was submitted which, if believed, made a case which could only be characterized as malicious and inhuman.

Objection is made to the conduct of counsel for plaintiff in his argument of the case. A part of these objections are embodied in the bill of exceptions proper which purports to set down matters occurring at the trial (including the argument of counsel) in the order in which such matters transpired. Other objections are set up and stated in the motion for new trial as having occurred at the argument, and to support these affidavits were filed. The first question is, can we consider the latter objections. We think we cannot. A bill of exceptions is signed by the trial judge and filed. Thus becoming a part of the record it vouches absolutely for what took place at the trial and anything outside of that cannot be considered as verity. Thus the bill of exceptions now considered vouches that a motion for

new trial was filed, but not for the truth of what appears in the motion. It vouches that affidavits were filed by counsel for either side; but not for the truth of what is stated in such affidavits. It has been several times ruled that incorporating matters in a motion for new trial did not supply the necessity of having them set out in the bill.

Affidavits are frequently filed in support of a motion for new trial and are considered by the trial court in passing on the motion, and may be by an appellate court in certain instances. But they relate to things which occurred outside the trial and are of matters to which the court's attention could not have been called when transpiring. But it should be manifest that things pertaining to the trial of a cause which should be set down in a bill of exceptions if they did transpire, ought not to be helped out by statements made by the attorneys in the motion for new trial and by affidavits in support thereof and in opposition thereto.

The only matters which the bill of exceptions vouches to us consist of the following:

"And afterwards, on the argument of this case before the jury, one of the counsel for the plaintiff, E. O. Brown, made the following remarks, to which the defendant at the time objected, to-wit:

"The Court: Let the record show that the attorney said, 'This testimony might be said to be manufactured of much same stuff as dreams are made of,' a Shakespearean quotation, part of it. Let the record show on account of the excellent literary merit his objection is overruled.

"Mr. Halliburton: Defendant excepts.

"And further in the argument before the jury, counsel for plaintiff, E. O. Brown, made the following remarks to which the defendant at the time objected:

"E. O. Brown: I characterize such testimony as the baseless fabric of a dream. It is a dream.

"Mr. Halliburton: Defendant objects.

"The Court: The objection is overruled. That is the remainder of the Shakespearean quotation. He stopped before he got it all in. I believe they hold a man can go into the literary state.

"Mr. Halliburton: Defendant excepts.

"And further in the argument before the jury, counsel for plaintiff, E. O. Brown, made the following remarks, to which the defendant at the time objected:

"Mr. Brown: This little child, who had been thrown from this car by the inhuman and oppressive act of this conductor.

"Mr. Halliburton: I object to that.

"The Court: Yes. Nobody testified thrown off.

"Mr. Brown: I withdraw the thrown off. I meant put her off. I didn't intend to put it that way, your Honor. I do not wish to charge the conductor with having used any personal violence in putting her off.

"Mr. Halliburton: I object to the action and excuse, and except."

We do not regard the objections as well taken. The remark that the child was "thrown from the car" was immediately recalled and disavowed. As to the other objections, the trial court's view was correct. The things complained of were mere matters of poetical license in which nearly all lawyers indulge.

An examination of all points made against the judgment has not led us to believe we should interfere and it is affirmed. All concur.