### SANDLER v. SCHMIDT.

No. 43291.

Supreme Court of Missouri.
Division No. 2.

Dec. 14, 1953.

J. Grant Frye, Cape Girardeau, for appellant.

Leo J. Rozier, Perryville, Dearing & Matthes, M. C. Matthes, Hillsboro, for respondent.

TIPTON, Judge.

In the circuit court of Perry County, Missouri, the appellant filed her petition in two counts. Count I was based on criminal conversation of respondent with appellant's husband, and count II was for alienation of his affections. Respondent's answer pleaded an affirmative defense. Briefly, it was that appellant and her husband, Harry Sandler, entered into a conspiracy, scheme and unlawful plan for the purpose of wrongfully obtaining money from respondent, and that the suit institut-

ed by appellant was the result of the unlawful and wrongful plan, scheme and conspiracy. The jury returned a verdict for respondent on both counts.

The evidence on behalf of appellant tended to show that appellant and Harry Sandler were married in September, 1921, and had two sons. In April, 1950, appellant found respondent's picture in her husband's billfold. She had noticed for some time prior to finding the picture that her husband seemed cold and indifferent to her, although she "tried to be nice to him" and she still loved him. For a while Sandler worked in St. Louis during the week but he began to stay there often over weekends and made various excuses for his failure to come to his home, which was near Perryville. Appellant tried to discuss with him the presence of respondent's picture in his billfold but he told her it was none of her business. For a year after the finding of the picture "he didn't want anything to do with" her and did not have intercourse with her, though they slept in the same bed. In later conversations about respondent, he was discourteous and disrespectful toward appellant. He asked her to get a divorce but she refused. He finally promised appellant that "he would go up to St. Louis and have it out with her (respondent), and he then asked me to forgive him and I did." The relationship between appellant's husband and respondent became known in appellant's community and greatly embarrassed her. Although appellant and her husband settled their troubles by resuming normal marital relations in the fall of 1950, she was still embarrassed and hurt over the affair and by the publicity.

Sandler testified he had sexual intercourse with respondent on various occasions during a two-year period or more prior to the time the appellant filed her petition in this case. He also testified that he and respondent had lived together as husband and wife in several places in St. Louis, and that he had gone on overnight fishing and hunting trips with her. These facts were confirmed by several witnesses.

Although present at the trial, the respondent did not testify. However, her father and mother, Everett and Josephine Phillips, did testify in her behalf.

Everett Phillips testified that in September, 1950, respondent came to his home. She had bruises on her body and he called Sandler to come to witness' home. At that time Sandler admitted that these bruises were the result of the manner in which he had held respondent. While there he wrote a note in which he stated, "I Harry Sandler promise Ethel Phillips [Schmidt] that I never will cause her any trouble in love affairs any more from this date on and that I am sorry that we had to have any misunderstanding and that we will be friends from now on." Everett Phillips testified that after the above statement was signed, Sandler said that "his wife would get everything they both had," meaning respondent and her husband, whom she had married a short time before. Later, he again talked to Sandler concerning a note held by witness and his wife and executed by appellant, Harry Sandler and their son, Robert. He stated that Sandler on that occasion said that if the Phillipses did file suit on the note, "there would be trouble." Josephine Phillips' testimony was similar to that of her husband.

It is conceded that on April 12, 1950, the Sandlers borrowed $1,150 from Mr. and Mrs. Phillips and a note was executed by appellant, Harry Sandler and their son, Robert, to evidence this indebtedness, and that prior to the institution of the case at bar, the Phillipses filed suit in the circuit court of Perry County to obtain a judgment on this note. An answer was filed on behalf of the Sandlers by the same attorney who now represents the appellant in this case, a part of which is as follows: "They say that the note was given pursuant to a conspiracy between plaintiffs, Mr. and Mrs. Phillips and one Ethel M. Schmidt, who was at that time enamored of defendant Harry Sandler and was attempting to cause him and defendant, Elsie Sandler, his wife, to be separated, and the note was a mere pretext for the purpose

of making a transfer of the assets of defendants indirectly to said Ethel M. Schmidt, through the aid of the plaintiffs, and that none of the defendants received any benefit from the transaction."

Later, the Phillipses obtained a judgment against the Sandlers in the note suit. Sandler testified the judgment was paid because it was a just debt. However, when his deposition was taken in the note case he refused to testify on the ground that "I might incriminate myself." When he was testifying in this case, he was asked what caused him to change his mind as to the matter of self-incrimination between the time his deposition was taken in the note suit and the date of trial in this case. His answer was, "because I had time to think over what it was done about, what for."

Other essential facts will be stated in the course of this opinion.

■ We will review appellant's assignments of error as shown by her "points and authorities," but will treat as abandoned assigned errors that appear only in her printed argument. Scott v. Missouri Pac. R. Co., 333 Mo. 374, 62 S.W.2d 834; Gelhot v. Stein, Mo.Sup., 174 S.W.2d 174.

Appellant's assignments of error I and IV are that the trial court erred in giving instruction number 4. This instruction reads as follows: "The Court instructs the jury that in order to entitle plaintiff to maintain this action insofar as alienation of affections is concerned, the plaintiff must show the enticing of her husband, and that his wrongful act or acts of the defendant was the cause of the interference complained of; and, if the jury believes that the cause of interference complained of was a voluntary bestowal of the plaintiff's husband's affections shown the defendant, who did nothing wrongful to gain such affections, then it will be the duty of the jury to find a verdict for the defendant as to her action for alienation of affections."

Appellant first contends that this instruction gave the jury a roving commission to find what acts of respondent were "wrongful" and what acts of appellant's husband would constitute "a voluntary bestowal" of his affections on respondent without hypothesizing the acts or facts from which the jury might legally make its findings.

■ We must assume that the jury was made up of men of average intelligence, and we cannot conceive how any jury could be mislead because the word, "wrongful," was not defined, or would fail to understand the words, "a voluntary bestowal." "And, we may add, that if either of the parties deems a hypothesized fact or situation not to have been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction." Hooper v. Conrad, Mo.Sup., 260 S.W.2d 496, loc. cit. 501. In that case we overruled in part our case of Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541.

Appellant contends that the phrase, "and, if the jury believes that the cause of interference complained of was a voluntary bestowal of the plaintiff's husband's affections shown the defendant," made this instruction erroneous because "he could well have done voluntarily what the evidence showed he did and Respondent still be liable, if her actions were such as would reasonably and probably cause a transfer of his affections from Appellant to Respondent, regardless of her intention and regardless of her volition."

The case of Farrow v. Roderique, Mo. App., 224 S.W.2d 630, loc. cit. 633, was an alienation of affections action. In deciding the case, the Springfield Court of Appeals said, "This instruction should have required the jury to find that there was some action on the part of defendant with the intent to alienate the wife's affections or of such a nature that alienation of her affections would be the natural result."

The case of Miller v. Pearce, 86 Vt. 322, 85 A. 620, held that to make a case for alienation of affections, it is necessary to show that there was "enticing, inducing and persuading" by the defendant.

■ "It is essential that defendant should directly and intentionally interfere

with the marital relation between the spouses, to the extent of causing a loss of consortium, as discussed infra § 665. It is not sufficient merely that one spouse has affection for or has become infatuated with defendant, or that friendly relations exist between the spouse and defendant, although distasteful to the other spouse and contrary to the edicts of society." 42 C.J.S., Husband and Wife, page 318, § 664.

■ "As a general rule a defendant to whom a spouse voluntarily, without wrongful inducement, gives his or her affections is not liable; and the mere maintenance of improper relations with one spouse does not give rise to a cause of action in the other unless the paramour is also guilty of active interference or some wrongful inducement. However, it has been held that defendant may be liable although he or she was not the original aggressor, that is, did not take the initiative in bringing about the situation which, through his or her wrongful acts, resulted in the alienation. Moreover, it is no defense that the spouse willingly eloped with defendant where defendant furnished the means and opportunity for the elopement, or that the alienated spouse consented to acts of adultery with her paramour after her affections had been alienated from her husband." 42 C.J.S., Husband and Wife, pages 321–322, § 670.

■ We think the above authorities show that instruction number 4 correctly declares the law. Appellant apparently overlooks the fact that this instruction specifically required the jury to find that respondent "did nothing wrongful to gain such affections" before the jury could return a verdict for respondent.

Appellant contends instruction number 5 is erroneous. That instruction reads: "The Court further instructs the jury that before you can find the issues for the plaintiff and against the defendant as to her claim for alienation of affections, you must find from the evidence that the defendant intentionally influenced the husband of the plaintiff to withdraw his affections from plaintiff. It is not enough for plaintiff to show merely

that the defendant was friendly with the husband of plaintiff, nor is it sufficient that you should find merely that defendant's conduct in her associations with plaintiff's husband amounted to impropriety, or was even of a scandalous nature, but before you can find for plaintiff as to her claim for alienation of affections, it must be shown by the evidence that defendant's conduct in her associations with the husband of plaintiff was improper and wrongful, and further, that the defendant intended by such conduct to cause plaintiff's husband to withdraw his affections from her or that such conduct on the part of the defendant, Ethel Schmidt, did cause the husband of plaintiff to withdraw his affections from plaintiff. If plaintiff has failed to prove any one of these facts by the greater weight of the evidence, it will be your duty to find the issues for the defendant as to her claim for alienation of affections."

Appellant contends that the use of the words, "improper and wrongful," gave the jury a roving commission to determine what would constitute "improper and wrongful acts." We see no distinction between this assignment of error and appellant's assignment of error as to the use of the word, "wrongful," in instruction number 4. This assignment is without merit.

Appellant further contends that this instruction is erroneous because before the jury could find for the appellant, it was necessary that the jury find that "Respondent 'intended by such conduct ("improper and wrongful") to cause Appellant's husband to withdraw his affection from her,' whereas it is not necessary for the Respondent to have intended the transfer of affections; but it is only necessary that she intended her wrongful acts which, according to the universal observation of mankind, would ordinarily result in the transferring of his affection to her."

■ We think there is no merit in appellant's contention. Of course, under this instruction, respondent's intent could be proven by her actions and conduct. That is usually the manner in which intent is proven. Wrongful intent is rarely proven by

direct admission of an accused party. In fact, an almost identical instruction was approved by the Springfield Court of Appeals in the case of Claxton v. Pool, 182 Mo.App. 13, 167 S.W. 623. Appellant's contention is without merit.

Sandler testified that he received written messages from respondent and they were delivered to him by George Semore, Louis Duvall and Henry Hagen. He testified that he destroyed the messages after he read them. He was asked to state the contents of these messages. On respondent's objection, the court ruled the contents would be hearsay but stated the witness could testify as to his actions after receiving the messages. Then the witnesss testified as follows:

"Q. What did you do about what was in them? A. If she asked could I come up, told me to come up or something, I generally seen I got there.

"Q. Did you do what she asked? A. I responded to them.

"Q. What did you do in the way of responding; what did you do? A. I went up and seen her."

For the purpose of argument only, we will assume it was error not to permit the witness to testify as to the contents of the written messages, yet we are unable to see where appellant was prejudiced in view of the quoted testimony, as this witness got before the jury the contents of these messages.

Appellant further contends that the evidence about the note given to Mr. and Mrs. Phillips which was signed by appellant, Sandler and their son, that the filing of the suit in the circuit court of Perry County on the note, that the testimony of the Phillipses that Sandler stated to them that if they filed suit on the note that "there would be trouble," and the fact that in that suit the Sandlers were represented by the same attorney who represents appellant in the case at bar, were so prejudicial as to cause the jury to return a verdict for respondent. No objection was made by appellant as to the admissibility of this evidence in the trial court, and she may not now be permitted to have this evidence reviewed by this court. Lonnecker v. Borris, Mo.Sup., 245 S.W.2d 53; LeGrand v. U-Drive-It Co., Mo.Sup., 247 S.W.2d 706.

Moreover, these facts were admissible in respondent's defense of a conspiracy to prevent the Phillipses from prosecuting the note case. "Conspiracy may be shown by circumstantial evidence. Mosby v. McKee, Zook & Whiteford Commission Co., 91 Mo.App. 500, 8 Cyc. 677 et seq. In the Mosby Case it was held, in effect, that it is not required to establish conspiracy by direct evidence; that, where the facts in evidence justify a reasonable inference of the existence of a conspiracy, it is sufficient; that slight evidence of collusion or concert of action will suffice; that, while there must be, at least, some evidence of collusion, still the same may be inferred from the acts of the parties and the surrounding circumstances. See, also, Allen v. Forsythe, 160 Mo.App. 262, 269, 142 S.W. 820; Laytham v. Agnew, 70 Mo. 48; Weinstein v. Reid, 25 Mo.App. 41." Belt v. Belt, 224 Mo.App. 780, 288 S.W. 100, loc. cit 107.

On cross-examination, Sandler was asked if he had assaulted respondent and it was necessary for Dr. Wildman to examine her. This Sandler denied. Appellant contends that this question was on a collateral issue and respondent was bound by his answer, and that it was error for respondent to introduce evidence contrary to witness' answer. We think such evidence is admissible as a circumstance to prove the relation between Sandler and respondent on the issue of alienation of affections, and, therefore, it was not a collateral issue.

Even though respondent did not deny Sandler's testimony that he had sexual intercourse with her, the jury was not bound to accept respondent's evidence as true. A defendant is not required to introduce any evidence in support of a verdict in defendant's favor. Fitch v. Star-Times Pub. Co., Inc., Mo.Sup., 263 S.W.2d 32. The case of Lewellen v. Haynie, Mo.Sup.,

287 S.W. 634, and other similar cases relied upon to show that the appellant did not have a fair and impartial trial are not in point because in those cases a verdict was rendered for the plaintiff.

In her motion for new trial, the appellant states that "the court erred in permitting counsel for defendant to argue to the jury that plaintiff could have called the defendant as her witness and that plaintiff had no right to complain of defendant's failure to testify in the trial." Attached to the motion for new trial is an affidavit of appellant's attorney which supports this assignment of error in the motion. The affidavit also states that the court reporter was not present during the arguments of counsel.

This same question was before the Kansas City Court of Appeals in the case of Blackwell v. Metropolitan St. R. Co., 137 Mo.App. 654, loc. cit. 658–659, 119 S.W. 456, 457. In disposing of the assignment, that court said:

 "The final objection made by defendant relates to misconduct of plaintiff's counsel in arguing the case to the jury. These objections do not appear in the record in a way which we can notice. The matters to which objection was made are not set forth in the bill of exceptions as having occurred. They are set forth in the motion for new trial and in affidavits in support of the motion, and these are incorporated in the bill of exceptions. It sometimes occurs that matters arising, or of which knowledge comes to the complaining party, after the trial, are put in motions for new trial, and are necessarily supported by affidavits; but where matters transpired during the trial between court and counsel, the bill of exceptions should state that such matters transpired. Putting such things in the motion for new trial does not prove them, nor are they to be shown by affidavits. They must be by the affirmative statement of the bill. We explained a similar objection in Harless v. Southwest Missouri Electric R. Co., 123 Mo.App. 22, 99 S.W. 793." See, also, Corbin v. Kansas City, C., C. &

St. J. R. Co., Mo.App., 41 S.W.2d 832; Key v. Key, Mo.App., 93 S.W.2d 256.

Under the record in the case at bar, this assignment of error is not before us for our review.

Finding no prejudicial error in this record, the judgment of the trial court should be affirmed. It is so ordered.

All concur.