LANE C. WILSON, by Next Friend, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, January 8, 1912.

1. **DAMAGES: Common Carriers: Shipment of Corpse: Mental Anguish: Exemplary Damages.** In an action against a railroad company for damages on account of the inhuman, willful and malicious manner in which the box and casket containing the body of the dead wife of plaintiff were handled, it appeared in evidence that a number of trunks had been piled around and upon the coffin box in the baggage car, and in unloading the same the box was used as a bouncing board to break the fall of the trunks, and plaintiff's protests against such treatment at the time were unheeded by the baggage man. *Held*, that plaintiff was not only entitled to a recovery of actual damages to the box and the casket and the additional expense required for preparing the body for burial, but also for his grief and mental anguish, as well as exemplary damages.

2. **PLEADING: Common Carriers: Pleading Contract: Action in Tort.** In an action against the carrier for damages on account of the rough handling and inhuman treatment of a box and casket containing the dead body of plaintiff's wife, which had been shipped as baggage, the petition refers to the contract of carriage entered into between plaintiff and defendant, but this is *held* to be only matter of inducement and that the cause of action is in tort and not on contract.

3. **PROPERTY: Corpse: Husband and Wife.** The husband has a *quasi* property right in the dead body of his wife which entitles him to the possession and control of the same for the purpose of proper and decent burial.

4. **DAMAGES: Mental Anguish: Personal Injury.** As a general rule mental anguish as a proper element of damages is limited to those actions where the plaintiff has received some injury

Wilson v. Railroad.

to his person or some legal right has been invaded of a nature, the natural consequence of which is to cause grief and distress of mind.

5. ———: ———: Negligence: Malice. As a general rule in cases of unintentional negligence, mental suffering, unaccompanied by bodily injury, is not an element of damages, but this rule does not apply in cases of wilfull and wanton wrong, and those committed with malice and intention to cause mental distress.

6. INSTRUCTIONS: Common Carriers: Damage to Corpse and Coffin. In an action against a carrier for damages on account of the rough and inhuman handling of the box and casket containing the dead body of plaintiff's wife, the instructions given in the case are examined and *held* that they contain no reversible error.

7. ———: ———: ———: Specific Negligence: Burden of Proof: Self Invited Error. In an action against a carrier for damages to a coffin and corps, which had been shipped as baggage, the petition alleged certain specific acts of negligence, but an instruction given for plaintiff put the burden upon the defendant to show that it was not guilty of any negligence. *Held*, this was error, but that the defendant was in no position to complain for its instruction contained the same error.

8. ———: Damages: Failure to Define Elements of. Damages. An instruction is objected to for the reason that it did not define the elements that the jury had the right to consider in determining the amount of plaintiff's damages, and neither were the jurors limited to the evidence to determine the amount. The authorities are reviewed and *held* that the instruction is not erroneous in its general scope, that the damages are not excessive and the judgment should not be reversed, because the instruction was not more specific.

9. ———: Master and Servant: Scope of Employment. In an action for damages against a railroad company for rough handling of a box and casket containing a corpse, which was shipped as baggage, the evidence disclosed that one, M., was one of the persons in charge of the baggage in the car at the time the casket was received for shipment and during the time it was damaged while the baggage was being unloaded by M. *Held*, that it was not reversible error to refuse an instruction telling the jury that the defendant would only be liable for such acts as its servant committed within the scope of his employment.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans*, Judge.

AFFIRMED.

*W. F. Evans* and *W. J. Orr* for appellant.

(1) A dead body is not property. Williams v. Williams, L. R. 20 Ch. Div. 652, 21 Am. Law Dig. 508; Guthrie v. Weaver, 1 Mo. App. 141; Meagre v. Driscoll, 99 Mass. 284; Pierce v. Proprietors, 10 R. I. 227; Weld v. Walker, 103 Mass. 422; Litteral v. Litteral, 111 S. W. (Mo.) 872; Long v. Railroad, 86 Pac. 289; Wynkoop v. Wynkoop, 42 Pa. St. 293; Keys v. Konkel, 119 Mich. 550; Griffith v. Railroad, 23 S. C. 25, 2 Blackstone Com. 429; Perley Mortuary Law, 23. (2) Mental anguish is not an element of damages for a breach of contract. Connell v. Tel. Co., 116 Mo. 196; Spahn v. Railroad, 116 Mo. 617. (3) Punitive damages are not allowable in a case of this kind under the proof. Hoagland v. Amusement Co., 170 Mo. 335. (4) Instructions Nos. 1, 2 and 4 given on behalf of respondent do not correctly declare the law of this case. Hoagland v. Amusement Co., 170 Mo. 335. (5) Appellant's request for instruction marked "B" should have been given. Wood on Master and Servant, sec. 286.

*I. N. Jett* for respondent.

(1) A surviving husband has a qualified property in the dead body of his wife, which the law will recognize and protect. Guthrie v. Weaver, 1 Mo. App. 141; Boggart v. Indianapolis, 13 Ind. 134; Renihan v. Wright, 125 Ind. 536; In re Beckman Street, 4 Brad. Sur. (N. Y.) 503; Koerber v. Patek, 123 Wis. 462; Larson v. Chase, 47 Minn. 307; Foely v. Phelps, 37 N. Y. S. 471; Beam v. Cleveland, 97 Ill. App. 24; 8 Amer. and Eng. Ency. of Law (2 Ed.), 834; 13 Cyc. 280. (2) Mental anguish may be considered as an element of damages when connected with bodily injury or when the wrong complained of was accompanied by circumstances of malice, insult or inhumanity. West v. For-

rest, 22 Mo. 334; Trigg v. Railroad, 74 Mo. 147; Crutcher v. Railroad, 132 Mo. App. 319; Harless v. S. W. Mo. Elec. R., 123 Mo. App. 22; Carter v. Oser, 134 Mo. App. 158; Smith v. Railroad, 122 Mo. App. 88; Shellabarger v. Morris, 115 Mo. App. 566; Carmody v. Transit Co., 122 Mo. App. 349; Knight v. Railroad, 120 Mo. App. 327. (3) Where the injury complained of results in any actual or compensatory damages and is done wilfully and intentionally it is a proper case for punitive or exemplary damages. Lambert v. Drug Co., 119 Mo. App. 693; Harlan v. Wabash, 117 Mo. App. 537; Beck v. Railroad, 129 Mo. App. 21; Calcuterra v. Iovaldi, 123 Mo. App. 347; Baxter v. Magil, 127 Mo. App. 398; Glover v. Railroad, 129 Mo. App. 574; White v. Railway, 132 Mo. App. 346; Coffee & Spice Co. v. Welborn, 153 Mo. App. 651; Summers v. Keller, 152 Mo. App. 626; Happy v. Pritchard, 111 Mo. App. 6; Knight v. Railroad, 12 Mo. App. 311. (4) The appellant's instruction marked "B" was properly refused by the trial court, for the reason that neither in his pleadings nor proof was there any issue raised which this instruction was designed to cover. Northup v. Ins. Co., 47 Mo. 435; Guinotte v. Ridge, 46 Mo. App. 254; Musser v. Adler, 86 Mo. 445; Higgins v. Railrod, 43 Mo. App. 547; Mize v. Glenn, 38 Mo. App. 98; Kennedy v. Railway, 128 Mo. App. 297; Holland v. Vinson, 124 Mo. App. 417; Heidbrink v. Railways, 133 Mo. App. 40; Kinlen v. Railway, 216 Mo. 163. (5) That a reviewing court may disturb a verdict on the ground that it is against the evidence or the result of passion or prejudice, the preponderance of the evidence against the verdict must be so strong as to raise the presumption of prejudice and passion on the part of the jury. Snyder v. Railroad, 85 Mo. App. 298; Price v. Evans, 49 Mo. 396; Spohn v. Railroad, 87 Mo. 74; Walton v. Railroad, 49 Mo. App. 620; Emply v. Railroad, 45 Mo. App. 522; Garnett v. Greenwell, 92 Mo. 120; State v. Primm, 98 Mo. 368.

GRAY, J.—The plaintiff for his cause of action alleges the following facts: The appellant as a common carrier, undertook to transport a casket containing the body of the dead wife of respondent from West Plains, in this state, to Jamestown, Indiana; "that the defendant by and through its agents, servants and employees, wholly disregarded its duties under said contract of transportation, and in wanton and willful disregard of the rights and feelings of plaintiff, at divers times and places between West Plains and Springfield willfully, wantonly and maliciously and in an inhuman manner, threw, stacked and piled upon said body, heavy baggage, to-wit: heavy trunks, having the appearance of trunks containing salesman's samples; that said trunks and other baggage were piled and stacked upon and around said body as high as the ceiling of the baggage car. Plaintiff states that at Springfield, Missouri, said defendant by and through its agents, servants and employees willfully, wantonly and maliciously, and in a grossly inhuman manner pulled and dislodged said heavy baggage from the top of said stacks or piles as aforesaid causing them to fall upon the box containing the body of plaintiff's deceased wife, causing them to bounce or bound from said box to the floor of the baggage car. Plaintiff states that defendant by and through its agents, servants and employees so used the said corpse as a bounding or bouncing board as aforesaid in the plaintiff's presence in the willful, wanton, malicious and inhuman manner aforesaid, and in wanton, willful and malicious disregard of the plaintiff's repeated entreaties to desist. Plaintiff states that in consequence of the aforesaid willful and grossly insulting and negligent conduct upon the part of the defendant by and through its agents, servants and employees said box containing said body was bursted; the lid torn loose; the screws placed in the lid to hold same on the box were torn out and bent down, and the whole outer surface of the box badly defaced and otherwise damaged.

Plaintiff states that by reason of the willful, wanton, malicious, insulting and inhuman acts of the defendant by and through its agents, servants and employees as aforesaid, plaintiff was made to suffer great grief, pain, mental anguish, humiliation, nervous excitement and loss of sleep. Plaintiff further states that by reason of the aforesaid and other grossly wrong and negligent conduct of the defendant by and through its agents, servants and employees, said body of plaintiff's said wife reached Jamestown, Indiana, in bad and unsightly condition, to-wit: badly purging, blood running from mouth, face and neck badly swollen, and otherwise showing that it had been violently disturbed. Plaintiff states that he was thus forced to take the box containing said body, and said body, into the presence of near relatives who had gathered for the funeral, in this damaged and unsightly condition, as aforesaid, by reason of the willful, wanton, malicious and grossly inhuman conduct of the defendants, by and through its agents, servants and employees, as aforesaid, and that he was thus forced to incur extra expense in preparing the body for interment, and that he has suffered and will suffer great grief, pain, mental anguish, humiliation and loss of sleep; all to plaintiff's damage in the sum of seven thousand five hundred dollars ($7500), three thousand seven hundred and fifty dollars ($3750) compensatory and three thousand seven hundred and fifty dollars ($3750) exemplary damages, for which sums he prays judgment."

Respondent at the time of the death of his wife, resided on a farm about three miles from West Plains. Her parents resided at Jamestown, Indiana, and it was decided to take the remains there for burial. Under the rules of the defendant, dead bodies are transported as baggage, and the corpse was accepted and carried as such. It was necessary to transfer at Springfield, and also at St. Louis. The corpse was in

a casket and the casket in a box, such as are usually used for such purposes.

The defendant filed a general denial, and the cause was tried before a jury in Howell county on the 14th day of July, 1911, resulting in a verdict in favor of the plaintiff, awarding him $500 compensatory damages, and $1000 exemplary damages. A judgment was rendered on this verdict, and the defendant appealed to this court.

It is appellant's first contention that the plaintiff's cause of action is for a breach of contract and his rights are to be measured accordingly. It is plain that the action is in tort. It is true the petition refers to a contract, but this is only matter of inducement. [Boling v. Railroad, 189 Mo. 219, 88 S. W. 35; Book v. Railroad, 75 Mo. App. 604.]

The next reason assigned for reversal, is that a corpse is not property, and that no action will lie to recover damages for injuries thereto. This is true when speaking of property in a commercial sense. [Guthrie v. Weaver, 1 Mo. App. 136; Litteral v. Litteral, 131 Mo. App. l. c. 311, 111 S. W. 872.] But in the broader meaning of the term, the husband has what the courts name a *quasi* property right in the dead body of his wife, which entitles him to the possession and control of the same for the purpose of proper and decent burial. [Litteral v. Litteral, supra; Koerber v. Patek, 123 Wis. 453, 102 N. W. 40, 68 L. R. A. 956.]

In Koerber v. Patek, supra, the Supreme Court of Wisconsin said: "For the purposes of this case we shall not deem it necessary to consider whether a corpse can be, in any respect, property. From the authorities above cited, and from original reason, the conclusion seems to us irresistible that in the nearest relative of one dying, so situated as to be able and willing to perform the duty of ceremonious burial, there vests the right to perform it, and that this is a legal right, which, as said in some of the cases, it is

a wrong to violate, and which, therefore, courts can and should protect and vindicate. It is not alone with reference to property that legal rights exist, nor is it only those invasions of legal rights causing tangible pecuniary injury for which courts will entertain civil actions and award damages. . . . We can imagine no clearer or dearer right in the gamut of civil liberty and security than to bury our dead in peace and unobstructed; none more sacred to the individual, nor more important of preservation and protection from the point of view of public welfare and decency; certainly none where the law need less hesitate to impose upon a wilful violator responsibility for the uttermost consequences of his act.''

The case of Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370, is recognized in the text books and in the Koerber case, supra, and in Lindh v. Railroad, 109 N. W. 823, as the leading case in this country on this question. On the precise point now under consideration, the court in that case said: ''But this whole subject is only obscured and confused by discussing the question whether a corpse is property in the ordinary, commercial sense, or whether it has any value as an article of traffic. The important fact is that the custodian of it has a legal right to its possession for the purposes of preservation and burial; and that any interference with that right by mutilating or otherwise disturbing the body is an actionable wrong. And we think it may be safely laid down as a general rule that an injury to any right recognized and protected by the common law will, if the direct and proximate consequences of an actionable wrong, be a subject for compensation.''

We have been unable to find any case in this state directly in point, but turning to the decisions of the courts of other states, we find the question has been considered by many of them, and the decisions with commendable unanimity declare in favor of the main-

tenance of the action. In addition to the cases above cited, the following may be included: Foley v. Phelps, 37 N. Y. Supp. 471; Burney v. Children's Hospital, 169 Mass. 57, 47 N. E. 401, 38 L. R. A. 413; Wright v. Hollywood Corporation, 112 Ga. 884, 38 S. E. 94; Palenzke v. Bruning, 98 Ill. App. 644; Beaulieu v. Railroad, 114 N. W. 353; L. & N. Railroad Co. v. Wilson, 123 Ga. 62, 51 S. E. 24; 16 Central Law Journal, 161; 1 Sutherland on Damages, p. 278; 2 Kinkead on Torts, sec. 463; 2 Joyce on Damages, sec. 1048; 8 Am. and Eng. Ency. of Law (2 Ed.), p. 835; Hassard v. Lehane, 128 N. Y. S. 161; Rushing v. Medical College, 4 Ga. App. 823, 62 S. E. 563; Gray v. State, 114 S. W. 635; Kyles v. Railroad Co., 61 S. E. 278.

It is true, the contrary doctrine is announced in the recent case of Long v. R. R. Co., 15 Okla. 512, 86 Pac. 289, 6 L. R. A., N. S. 883, but that case is practically without any support in the decisions of recent years. The appellant says that this doctrine is of recent origin, and that no one is able to put his finger upon the time or the place of its birth, and that it was unknown to the common law. This argument is completely answered by the Supreme Court of Wisconsin, in the Koerber case. In speaking of the absence of authority in the English cases, the court said: "This silence is easily accounted for by the dominance of the church both over the right of custody and burial of the dead, and through its ecclesiastical courts, over enforcement or vindication of such rights."

We are next to consider whether mental anguish is a proper element of damages in this action. The question whether such damages is a proper element in actions in tort has been presented to nearly every appellate court in this country, and there is much conflict in the opinions. Where the plaintiff has suffered physical injury by the wrong complained of, all of the opinions, with but few exceptions, proclaim his

right to recover such damages. And the same may be said of the opinions in cases wherein the plaintiff was suing in libel, slander, malicious prosecution or seduction. [13 Cyc. 44.] Such damages are not recoverable in all cases, although the plaintiff actually suffered mental anguish. They are not recoverable in actions for death by the wrongful act of another. [Parsons v. Railway, 94 Mo. 286, 6 S. W. 464; Calcaterra v. Iovaldi, 123 Mo. App. 347, 100 S. W. 675.] Broadly stated, their allowance is limited to actions where the plaintiff has received some injury to his person, or some legal right has been invaded of a nature natural to cause grief or distress of mind. [Beaulieu v. R. R. Co., supra.]

Some of the courts have allowed such damages in actions for breach of contract to send or deliver telegrams. The right to recover such damages in telegram cases is known as the "Texas Doctrine," as it originated in Texas, but is now the law in Kentucky, North Carolina and some other states. In this connection it may be said that in the states where the "Texas Doctrine" prevails, the right to recover mental anguish for a breach of a contract concerning the handling of a corpse, is also allowed. [Railway. Co. v. Hull, 113 Ky. 561, 68 S. W. 433; Hale v. Bonner, 82 Texas 33, 17 S. W. 605, 14 L. R. A. 336; Renihan v. Wright, 125 Ind. 536, 25 N. E. 822; Beaulieu v. R. R. Co., supra.] But this so-called "Texas Doctrine" has no recognition in this state. [Connell v. Teleg. Co., 116 Mo. 34, 22 S. W. 345.] And it is opposed to the weight of authority elsewhere. [63 Central Law Journal, 340; 1 A. & E. Ann. Cases, 355; Francis v. Teleg. Co., 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. Rep. 507; Chapman v. Teleg. Co., 88 Ga. 763, 17 L. R. A. 430; Teleg. Co. v. Page, 68 Miss. 748, 9 So. 823, 13 L. R. A. 859; Beaulieu v. Ry. Co., supra.]

In the Beaulieu case, supra, it is said that in all states where the "Texas Doctrine" is repudiated, that mental anguish cannot be considered as an element of damages in an action for a breach of contract concerning the burial of the dead. And this is what is held in the well-considered case of Koerber v. Patek, supra.

The respondent admits this in his brief, in the following language: "We were willing to concede always and at all times that if this had been a case of mere negligence, no matter how far-reaching in its results, this respondent could not have recovered anything for mental sufferings under the law as it is in Missouri." And the petition in this case shows more than a mere breach of contract or negligence, and the great weight of authority, including text writers, holds that any willful or wrongful interference or intentional mutilation of the dead body, subjects the wrong-doer to an action in which mental anguish is a proper element for consideration in assessing damages. [See authorities above cited.]

In Beaulieu v. R. R. Co., supra, and Koerber v. Patek, supra, the authorities are collected, and reference is made to these cases for the same.

Appellant says plaintiff sustained no physical injury, and therefore, cannot recover for mental suffering. The general rule in cases of unintentional negligence is, that mental suffering, unaccompanied by bodily injury, is not an element of damages, but it does not apply in cases of willful and wanton wrong, and those committed with malice or intention to cause mental distress. [Small v. Lornegon, 81 Kans. 48, 105 Pac. 27, 25 L. R. A. (N. S.) 976, note.]

In 13 Cyc. Law & Proc., p. 44, it is said: "While the general rule obtains that a recovery for mental anguish must generally be connected with the personal physical injury, it is also true that where the injury is accompanied by circumstances of malice, in-

sult, or willfulness, a recovery may be had therefor.'' The exception to the general rule is stated in 8 Am. & Eng. Law (2 Ed.), 667, as follows: ''It has been said that the rule requiring bodily injury, in order to warrant a recovery for mental suffering in cases of negligence, has no application to wanton or intentional wrong, or where the mental distress was incident to or a natural consequence of some actionable wrong.''

This exception to the general rule has been recognized from an early day in this state. [Trigg v. R. R. Co., 74 Mo. 147; West v. Forest, 22 Mo. 334; McGinnis v. R. R., 21 Mo. App. 399; State v. Weimel, 13 Mo. App. 583; Snyder v. R. R. Co., 85 Mo. App. 495; Hickey v. Welch, 91 Mo. App. 4; Rawlings v. R. R. Co., 97 Mo. App. 511, 71 S. W. 535; Shellabarger v. Morris, 115 Mo. App. 566, 91 S. W. 1005; Smith v. R. R. Co., 122 Mo. App. 85, 97 S. W. 1007; Harless v. S. W. Mo. Elec. Ry. Co., 123 Mo. App. 22, 99 S. W. 793; Carter v. Oster, 134 Mo. App. 146, 112 S. W. 995.]

The plaintiff testified that when the train arrived at Springfield, the employee of defendant stood on the box containing the coffin, and pulled heavy trunks from the top of the car and let them fall with full force on the box, and that while he stood there crying and pleading with the employee to be careful and not handle the body of his wife so roughly and in such an inhuman manner, his prayers were entirely ignored. If these things were true, the jury were authorized to find that the acts of the employee of the defendant showed a wanton disregard for the rights and feelings of the plaintiff.

The answer of appellant is that the car was loaded and the trunks had to be removed. This did not prevent the removing of the box when the trunks had been taken off of it, and it is practically admitted that when the trunks that were on the box had been removed, instead of then removing the box from the car, the same was used as a step-ladder to enable the employee

to reach the trunks in the top of the car, and as a shield or protection to the trunks by permitting them to fall upon the box instead of the floor of the car. It may be conceded that while the box was handled as baggage, the company was not liable for placing other baggage on top of it, but the proper regard for the rights of the plaintiff, under the circumstances, required, that the company be not entirely unmindful of the fact that the box contained a corpse, and the defendant's servants had no right to use it as a bouncing board for the protection of ordinary baggage; and in doing so, they showed an utter and wanton disregard for the rights of plaintiff.

In Lindh v. R. R. Co., supra, the defendant undertook to transport a casket containing the body of the dead wife of plaintiff. In taking the casket through a named station, it became necessary to transfer to another train. In so doing, the defendant carelessly and negligently left the same out of doors upon a railroad truck and exposed to rain, and willfully ignored the request of plaintiff to place the truck under cover. The casket was soiled and the corpse mutilated and disfigured. The court held that a petition stating such facts stated a good cause of action.

In the case of L. & N. R. R. Co. v. Wilson, supra, the facts were identical with the Lindh case, and the court held that plaintiff was entitled to recover for mental anguish.

The remaining question is whether the case was properly submitted to the jury. In behalf of the plaintiff the following instructions were given:

"1. The court instructs the jury that if you find and believe from the evidence that plaintiff secured from defendant transportation for the body of his deceased wife from West Plains, Missouri, to Jamestown, Indiana, paying therefor the amount asked by the defendant, and that the defendant received said body, properly encased, and in good condition at West

Plains, Missouri, and delivered the same in bad and damaged condition at Jamestown, Indiana, then the plaintiff is entitled to recover, unless defendant can show entire absence of negligence and wrongful acts, and you are instructed that the burden of proof is upon the defendant to show such absence of wrongful conduct.

"2. The court instructs the jury that if you find and believe from the evidence that the defendant by and through its agents, servants and employees, willfully and intentionally piled and stacked heavy baggage upon the corpse of plaintiff's deceased wife for which plaintiff had secured transportation, and which he was entitled to have safely and carefully transported and delivered, and that defendant willfully and intentionally pulled and dislodged heavy baggage from the tops of such piles or stacks, causing and allowing it to fall upon the corpse, causing damage thereto, and causing plaintiff any grief, pain, mental anguish and suffering, and that such wrongful acts were done under such circumstances as to constitute malice, insult or inhumanity, then your finding will be for the plaintiff in such amount as in your judgment will compensate him for his injuries, not exceeding thirty-seven hundred and fifty dollars ($3750). And you are further instructed that if you find and believe that such wrongful acts were done intentionally, and maliciously, as this term is used in the law, then you are at liberty to award him additional damages, as exemplary or punitive damages, in such amount as may seem just and reasonable, not, however, exceeding thirty-seven hundred and fifty dollars ($3750), both as a punishment to defendant and as a warning to others. And your award of exemplary or punitive damages should be expressed separately in your verdict.

"3. The court instructs the jury that by the use of the terms 'malice' and 'malicious' in these instruc-

tions is not meant spite or ill-will, but the intentional doing of a wrongful act without just cause or excuse.

"4. The court instructs the jury that under the law mental suffering, pain and anguish, when accompanied by physical injury may be considered as an element of damages and that nervous excitement and loss of sleep are such physical injury as will constitute a ground for such consideration. [147 Mo. App. 375.] If, therefore, you believe from the evidence that the plaintiff was made to suffer nervous excitement and loss of sleep by and through the willful and wrongful acts of the defendant as heretofore defined, then you may award him such compensation for mental suffering, pain and anguish as may seem just and reasonable, not exceeding thirty-seven hundred and fifty dollars ($3750)."

At the request of the defendant the following instructions were given:

"1. You are instructed that a corpse is not property under the law, but the box and casket in which it is transported is property and if you find and believe from the evidence that plaintiff delivered to the defendant the box and casket in good condition and that the same was re-delivered to the plaintiff at Jamestown in a damaged condition, then plaintiff is entitled to recover such sum as will fully compensate him for such damages. And in no event can you allow anything on account of any mental suffering on the part of the plaintiff on account of the mere negligent handling of the box containing the casket and corpse nor by way of punishment for such negligent handling.

"2. Even if you should find that the person intrusted with the duty of unloading the baggage at Springfield did drop certain trunks on to the box containing the casket, still if this was done negligently and carelessly and not willfully and maliciously toward the plaintiff the plaintiff would not be entitled to recover for mental anguish nor punitive damages,

but would only be entitled to recover such sum as will compensate him for the damage to the box not exceeding its value and such sum as will reimburse plaintiff for such sums as he was compelled to expend to prepare the corpse at Jamestown for burial.

"3. You are instructed that even if you find that the man who handled the baggage at Springfield allowed heavy trunks to fall upon the box and injure the same and you also find that the corpse on arrival at Jamestown was disarranged and soiled, necessitating re-preparation for burial, still, unless the condition of the corpse at Jamestown was due to the alleged rough handling at Springfield, you cannot allow exemplary damages nor damages for mental suffering on account of the condition of the corpse.

"5. Unless the plaintiff has shown by a preponderance of the evidence that the condition of the corpse upon its arrival at Jamestown was the direct result of the alleged rough handling at Springfield, then plaintiff would not be entitled to damages for mental anguish suffered, if he did suffer, on account of such condition.

"6. If the condition of the corpse upon its arrival at Jamestown was due to the fact that the same was hauled from plaintiff's home to West Plains and thence transported by rail from West Plains to Jamestown and to its being transferred en route and not to the alleged rough handling at Springfield, then plaintiff cannot recover for any mental anguish growing out of the condition of the corpse at Jamestown.

"7. The court instructs the jury that if you believe from the evidence that the condition of the corpse upon its arrival at Jamestown was due to the manner in which it was prepared for shipment or the failure to secure the casket in the box, then the plaintiff is not entitled to recover anything on account of the condition of said corpse at Jamestown and in passing up-

on this question you will consider all the facts and circumstances given in evidence.''

The first instruction plainly told the jury that if the corpse was in good condition when delivered to the carrier, and was received at Jamestown in bad condition, plaintiff was entitled to recover, unless the defendant showed an entire absence of negligence and wrongful acts on its part. This instruction, standing alone, was erroneous and misleading. The petition alleged certain specific acts of negligence, but the instruction ignored this fact and permitted the jury to find for the plaintiff, unless the defendant had shown to their entire satisfaction that it was not guilty of negligence charged in the petition, or any other negligence. But the defendant's instruction No. 1 contained the same error, and even went further and admitted that if the casket did not arrive in good condition, the plaintiff was entitled to recover, but denied the right to recover for mental anguish if the condition of the corpse and box was the result of mere negligent handling.

The third instruction given at the request of the appellant told the jury that unless they found the condition of the corpse at Jamestown was due to the alleged rough handling at Springfield, nothing could be allowed as exemplary damages or mental suffering. And by the fifth instruction the question was again submitted to the jury and they were told thereby that unless the plaintiff had shown by a preponderance of the evidence that the condition of the corpse upon its arrival at Jamestown, was the direct result of the alleged rough handling at Springfield, plaintiff was not entitled to damages for mental anguish.

Appellant further complains of plaintiff's instruction No. 1, and says it fails to state or inform the jury as to what the plaintiff is entitled to recover for. This is true, but the instruction did not contain an improper element of damages, and appellant's instructions were specific and told the jury that plaintiff

could only recover such sum as would compensate him for the damage to the box and what he was compelled to expend to prepare the corpse at Jamestown for burial, unless the jury found that the defendant's acts at Springfield were willful and malicious toward the plaintiff.

The instruction was correct as far as it went, as plaintiff was entitled to recover nominal damages when he showed that his legal rights had been invaded. [Lampert v. Drug Co., 119 Mo. App. 693, 100 S. W. 659.]

When the instructions are read together it will be seen that so far as the actual damages are concerned, the plaintiff was allowed to recover for the damages to the casket and the amount expended by him to prepare the corpse for burial at Jamestown, providing the jury found the damages were caused by the mere negligence of the defendant, and in such case, no exemplary damages were permitted. In other words, they told the jury that the plaintiff was not entitled to recover for mental suffering, or any exemplary damages, unless the jury found that the condition of the casket and corpse, when they arrived at Jamestown, was due to the alleged rough handling at Springfield. The instructions fairly submitted the question of damages which were the result of mere negligence.

The second instruction given for plaintiff submitted to the jury as a willful tort, the act of the defendant in putting other baggage on top of the box containing the corpse. There was no evidence upon which to base this part of the instruction. The corpse was carried as baggage, and there was no evidence that in placing other baggage on the box, the defendant's servant acted maliciously or wrongfully. If this instruction stood alone, a more difficult question would be presented. The defendant's instructions plainly told the jury that the right to recover for mental anguish was conditioned upon the finding that the con-

dition of the corpse at Jamestown was due to the rough handling at Springfield. It will be further noticed that plaintiff's instructions did not permit the jury to allow damages for putting other baggage on the box, but to allow such damages, the jury were further required to find that the defendant willfully and intentionally pulled and dislodged heavy baggage from the tops of piles of the same, and permitted it to fall upon the corpse.

The next objection to this instruction is, that it permitted a recovery for damages to the corpse. There was evidence that the corpse arrived in bad condition, due to the rough handling at Springfield. Of course, the measure of damages or plaintiff's right to recover for injury to the corpse was limited to the amount he was compelled to expend to re-arrange the corpse for burial. The instruction did not limit such damages to this amount, but the instruction was proper as far as it went, and if the defendant was not satisfied with it, or was of the opinion that the jury might be misled thereby, it could easily have asked an instruction limiting the amount to be recovered for injury to the corpse, even though defendant's act was willful, to the amount necessarily expended to prepare it for burial.

The instruction is objected to for the further reason that it did not define the elements that the jury had a right to consider in determining the amount of plaintiff's damages, and neither were the jurors limited to the evidence to determine the amount. In support of this objection, defendant relies on the cases of Camp v. R. R. Co., 94 Mo. App. 272, 68 S. W. 96, and Hawes v. Stockyards Co., 103 Mo. 60, 15 S. W. 751.

In the Hawes case the instruction told the jury in event of a verdict for plaintiff "they should find for him in such sum as they believed would compensate him for his injury, so received, not exceeding the sum of $20,000." In speaking of this instruction the court said: "This declaration totally failed to inform the

jury of the proper element of compensation within the meaning of the law. It gave them a roving commission to conjecture the consequences of plaintiff's injury, however remote.''

If we are guided by the law as declared in the Hawes and Camp cases, then plaintiff's instruction is erroneous. But in the case of Browning v. R. R. Co., 124 Mo. 55, 27 S. W. 644, the following instruction was upheld: ''If the jury find for the plaintiff they will assess her damages at such sum as in their judgment will be a fair and just compensation to her for the loss of her husband, not exceeding the sum of $5000.'' The court said: ''The instruction is not erroneous in its general scope; and if, in the opinion of counsel for defendant, it was likely to be misunderstood by the jury, it was the duty of the counsel to ask the modifications and explanations in an instruction embodying its view.''

In Smith v. Fordyce, 190 Mo. 1, 88 S. W. 679, the following instruction was sustained: ''The court instructs the jury if they find a verdict for the plaintiff, they may allow him such damages not exceeding ten thousand dollars as they believe he has sustained by reason of the injuries, if any, to his left arm caused by the collision described in the evidence.''

In Simpson v. Ball, 145 Mo. App. 268, 129 S. W. 1017, the Court of Appeals in speaking of the Hawes case, and similar cases, said: ''These cases do support the rule contended for by plaintiff, but in being distinguished by the Supreme Court in later cases, they have been practically overruled.'' In Dunn v. R. R. Co., 81 Mo. App. 42, in speaking of the McGowan case, which declared the rule the same as the Hawes case, the court said: ''That case is authority for the point suggested, but has not been followed by the Supreme Court in later cases.''

In Sherwood v. Railroad, 132 Mo. 339, 33 S. W. 774, the court held an instruction on the measure of

damages, erroneous, but refused to reverse the judgment on account thereof, and said: "Under the circumstances as shown by the record, the damages were not excessive and we do not feel inclined to reverse the judgment on account of this instruction, although we do not approve it."

Plaintiff's fourth instruction is out of the ordinary in several respects. In the first place, it tells the jury that excitement and loss of sleep are physical injuries in and of themselves, and the instruction cites its own authority therefor, to-wit: "147 App. 375." This part of the instruction only purports to be an abstract proposition, and no recovery is authorized therein. The part of the instruction permitting the recovery is complete, and only allows damages for mental suffering, pain and anguish, suffered by and through the willful and wrongful acts of the defendant as defined in other instructions. The instruction, however, does permit a recovery for mental anguish in excess of the amount sued for. In the petition the plaintiff alleged his actual damages were $3750, which consisted of damages to the box containing the coffin, the condition of the corpse, and the extra expense incurred in preparing the body for interment, and his mental anguish. The instruction authorized a verdict of $3750 for mental anguish alone, and the jury were told that a verdict for that amount for mental anguish, would be sustained by the evidence. The verdict was for $500 only, and it cannot be said that there is any probability that a different verdict would have been rendered, if the court had told the jury that plaintiff's actual damages from all elements, could not exceed $3750.

The appellant assigns as error the action of the court in refusing the following instruction:

"B. You are instructed that before you can allow the plaintiff damages for any mental anguish or by way of punishment for any of the alleged wrongful acts of the servants at Springfield, you must find that such acts were either authorized by the railroad company or that such wrongful acts were committed by such servants within the scope of their employment. Because the master is not liable for every wrongful act committed by any of his servants but is only liable for such acts as is authorized or such as are committed by the servant within the scope of the servant's employment."

The appellant says it was a question for the jury whether the acts complained of were committed by defendant's servant while acting within the scope of the employment. This is true in certain cases. In this case, however, the uncontradicted evidence is, that the box and corpse were received by the appellant into its baggage car to be taken to Springfield and there transferred to another train; that one Rankin Moore was in charge of the baggage in the car in which the corpse was placed at West Plains, and that at Springfield he unloaded the baggage in the car including the corpse. There is no pretense that any other person was acting for the defendant in the discharge of the duties relating to the baggage except him and the others with him. He testified that he was in the car and unloaded the baggage. It is true, he testified that he was the assistant to the express man in charge of the express in the same car, but it is not claimed that the company had a baggageman who attended to baggage only. The evidence discloses that the expressman handled the baggage for the railroad company as well as the express for the express company. On any view of the case Moore was the representative of the defendant in unloading the baggage.

In Keen v. Railroad, 129 Mo. App. 301, 108 S. W. 1125, a brakeman assaulted a passenger, and the de-

fendant asked the court to instruct the jury if the brakeman made an unprovoked assault on plaintiff, such assault was not in the line of the duty of the brakeman, and the company was not liable for the injury inflicted. Speaking of this instruction, the court said: "This instruction was refused and rightfully. There is no authority for it in this state. The law is directly to the contrary. The evidence of both plaintiff and the brakeman shows the affray arose in connection with the brakeman's duty to look after the train and the safety of the passengers on it.

Even though we should conclude that the question was one for the jury, yet we have no hesitancy in saying that the failure to submit it under the evidence in this case in no wise injured the appellant. When it was disclosed that Moore was one of the persons in charge of the baggage from the time it was received at Willow Springs until it was unloaded at Springfield, and unless he and the expressman under whom he worked had charge of the baggage for the railroad company, there was no person performing that duty for the company, no jury would find for the defendant on the ground that Moore, in unloading the baggage, was not representing the appellant, and under its authority.

This case is one to which the section of our statute precluding courts from reversing the judgment of the trial court unless substantial error was committed against the appellant, is especially applicable. The plaintiff's case is supported by the preponderance of the evidence, and the verdict is not unreasonable; no improper evidence was admitted, and with marked ability the appellant's counsel carefully guarded every interest of their client, and have in this court, by printed brief and oral argument, made the most out of every irregularity of the proceedings. But when all have been considered, we cannot say that any of the

irregularities materially affected the rights of the appellant, and therefore, it is our duty to affirm the judgment, and the same is accordingly done.      All concur.