**KANSAS CITY STAR COMPANY,**
**Respondent,**

v.

**Darrell GUNN, Appellant.**

**No. WD 32285.**

Missouri Court of Appeals,
Western District.

Jan. 12, 1982.

James W. Henry, Kansas City, for appellant.

Joseph R. Colantuono, Kansas City, Darrell L. West, Nashville, Tenn., for respondent.

Before TURNAGE, P. J., and PRITCHARD and CLARK, JJ.

CLARK, Judge.

Darrell Gunn appeals an order of partial summary judgment, designated a final judgment for purposes of appeal (Rule 81.-06), denying him recovery on a tort claim because the claim is barred under the Kansas statute of limitations. Gunn contends the longer period of limitation under Missouri law is applicable and that the claim should be heard on the merits. Affirmed.

This cause originated when the Kansas City Star sued Gunn on an account for newspapers received by Gunn as a contract delivery agent. In a three-count counterclaim, Gunn responded asserting various causes against the newspaper, only Count I of which is in issue here. In that count, Gunn alleged he had been the owner of an exclusive route for sale and delivery of the Kansas City Star and Times, a route purchased from a former carrier for a substantial sum. Gunn's property interest in that route, consisting of equipment and an established clientele was, according to Gunn's counterclaim, wrongfully and maliciously destroyed by the Kansas City Star Company in December 1977 when management of the newspaper terminated the arrangements with all independent route operators and contracted for delivery of papers on a fee basis.[1] The counterclaim sought actual and punitive damages.

Facts relevant to the origin of Gunn's claim were not in dispute. The "Star" route was purchased by Gunn from the former route owner in 1974. The transaction was negotiated with limited participation by the newspaper which was apparently entitled to approve or reject the qualifications of a proposed route transferee. After that approval was obtained, Gunn commenced operating the route using his own equipment and delivering the newspapers which he purchased from the company. Gunn's gross profit was the difference between the price Gunn charged his subscribers and the amount paid the company for the newspapers.

Gunn lived in Louisburg, Kansas. All newspapers he sold were delivered in Kansas, either door to door or from vending machines. The route Gunn owned was limited to the Louisburg vicinity and was entirely in Kansas. The Kansas City Star and Times are published in Missouri and their principal and executive offices are located in Missouri. Generally, Gunn's supply of newspapers was delivered to him in Kansas

1. In 1978, Gunn accepted contract employment as a delivery agent to serve the route based on a fee for delivery of the paper and a commission on subscriptions collected. He later elected to terminate that agreement in April 1980. This appeal does not involve the question of what claims, if any, were extinguished by or were merged into the 1978 agreement nor is any opinion expressed regarding the merits of the cause of action pleaded. We consider here only the question of conflicting statutes of limitation applicable to the tort claim as alleged.

except on unusual occasions when he came to Missouri to obtain copies for delivery.

On September 24, 1977, the Kansas City Star Company informed all route carriers that a new method for distributing the paper would be implemented December 1. Independent carriers would no longer be sold bulk quantities for resale to subscribers in their territories and all prior arrangements to this effect were cancelled. From and after December 1, carriers would be employed under a delivery agent contract and would be compensated by a fee computed on the number of papers delivered and a commission on subscriptions collected.

The gist of Gunn's claim was that the act of the Kansas City Star Company foreclosing his future opportunity to buy newspapers for resale and substituting another system for delivery of the paper in the territory he had served was an intentional tort which destroyed the value of his business as an independent route carrier. Property rights damaged and for which claim was made included the value of Gunn's distribution route, his relationship with subscribers, his business expectations for future income and the value of physical assets used in serving the route.

In this action brought in Missouri, the question is whether the substantive law of Missouri or Kansas applies, a question which, in turn, requires determination of where the cause of action arose. The parties agree, and indeed there can be no dispute, that § 516.190, RSMo 1978 requires application of the Kansas law if the cause of action originated in Kansas. So, too, is it apparent that K.S.A. 60–513(a) places a two-year limitation on actions for injury to the personal property or rights of another. Gunn's counterclaim was first presented in June of 1980 and was thus well beyond the period of Kansas limitation.

For purposes of applying the statute of limitations, both Kansas law, K.S.A. 60–513(b), and Missouri law, § 516.100, RSMo 1978, provide that the cause of action is not deemed to have accrued until injury has resulted and can be ascertained. It therefore follows that the final event requisite to

maturity of a cause of action is the incident of damage prior to which the claim is merely incipient. In the present case, the controversy over choice of law is generated because the perpetration of injury by conduct alleged to be wrongful occurred in one state while the damage flowing therefrom was sustained in another.

Beyond doubt, all acts of the Kansas City Star Company claimed by Gunn to constitute an intentional tort were performed in Missouri. The decision to terminate independent route carriers, the notice to Gunn of this change and the implementation of the decision were all acted upon from the executive and publishing offices of the company in Missouri. It is equally clear, however, that Gunn sustained all of his damage in Kansas where he lived and conducted his business and where his route and customers were situated. The choice of laws question therefore requires ascertainment of what rule governs where the defendant's act results in harmful impact across a state line.

A relevant Missouri case is *Hughes Provision Co. v. La Mear Poultry & Egg Co.*, 242 S.W.2d 285 (Mo.App.1951) cited by both parties. There, defendant had sold and shipped from Missouri a quantity of unwholesome foodstuffs to a customer in Ohio where damage was sustained on consumption of the product. The court held that defendant's liability was measured by the domestic law of Ohio and noted that where the defendant's conduct occurs in one state and the injury is done in another, the "locus delicti" is taken by the courts in this country to be the state where the last event necessary to make the actor liable occurs.

While the concept of significant contacts or relationships is a complex subject in the choice of law area, the text writers are generally in agreement that when an act operates across a state line, its legal character is determined by the law of the place where it first takes harmful effect or produces the result complained of. R. Leflar, American Conflicts Law, § 133 at 267 (3d ed. 1977). This mechanical or orthodox rule is not an acceptable solution in all conflicts cases, particularly as Professor Leflar

points out, where the values for which recovery is sought are largely intangible or are of transitory situs. At least as to property rights, however, the usual case is resolved by application of the local law of the state where the injury occurred in tort actions. Restatement (Second) of Conflict of Laws § 147, Comment E (1971).

The subject case presents no facts which differentiate it from the circumstances in *Hughes Provision Co. v. La Mear Poultry & Egg Co., supra,* nor does there appear to be any compelling reason why the orthodox rule of harmful impact should not control in the choice of state law. Moreover, application of Kansas law is logically most persuasive because Gunn and his business relationship were entirely localized in and identified with Kansas, Missouri being only tangentially implicated as the source for production of the newspaper. The trial court correctly determined that Kansas law governed and that Count I of Gunn's claim was barred by the Kansas statute of limitations.

The judgment is affirmed.

All concur.