**Richard GALVIN, et al.,
Plaintiffs–Appellants,**

v.

**McGILLEY MEMORIAL CHAPELS, et
al., Defendants–Respondents.**

**No. WD 39212.**

Missouri Court of Appeals,
Western District.

Dec. 15, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 2, 1988.

Application to Transfer Denied
April 19, 1988.

John E. Turner, Kansas City, for plaintiffs-appellants.

Robert W. Cotter, Kansas City, for defendants-respondents.

Before NUGENT, P.J., and SHANGLER and BERREY, JJ.

BERREY, Judge.

The children of Dorothy Galvin, deceased, brought a negligence action against McGilley Memorial Chapels, et al. (McGilley), for the mishandling of the deceased's remains. McGilley filed a motion for summary judgment alleging the law of the State of Kansas applied to the action and that a cause of action for negligent infliction of emotional distress for interference with a dead body is not recognized by that state. The trial court granting McGilley's motion stated that based on the most significant contacts test set forth in Section 145 of the Restatement (Second) of Conflict of Laws, Kansas law applied and plaintiffs' petition failed to state a cause of action because it did not allege intentional or malicious conduct needed to recover under Kansas substantive law. *See Burgess v. Perdue*, 239 Kan. 473, 721 P.2d 239 (1986).

The undisputed facts are as follows:

Before her death, Dorothy Galvin lived in Overland Park, Kansas, with her husband, Richard S. Galvin, who still maintains residence there. The children of Dorothy and Richard Galvin, Richard R. Galvin, Barbara Galvin, Patricia Posada, and Jane Middleton, plaintiffs, lived with their parents in Overland Park and attended high school there but moved to other states to attend college or pursue employment. Presently, and at all pertinent times, the children-plaintiffs lived in Des Moines, Iowa; Jacksonville, Florida; Naples, Florida; and Arvada, Colorado, respectively.

On December 29, 1984, Dorothy Galvin died at St. Joseph Hospital in Kansas City, Missouri. Shortly thereafter, her husband and two daughters, Barbara Galvin and Patricia Posada, met with an employee of McGilley at the McGilley–Hoge Chapel in Overland Park to make funeral arrangements. McGilley is a Texas general partnership which operates three funeral facilities in the metropolitan area including McGilley–Hoge Chapel in Overland Park and McGilley Midtown Chapel in Kansas City, Missouri. At the Overland Park funeral facility, Barbara Galvin entered into a contract with defendant-McGilley for the purchase of funeral goods and services including air transportation of Dorothy Galvin's remains to Sioux Falls, South Dakota for final funeral services and burial.

On January 1, 1985, a prayer service and visitation at the McGilley–Hoge Chapel was conducted as part of the contracted funeral services. After the services, the casket containing Dorothy Galvin was transported to McGilley's Midtown Chapel to be prepared for air shipment to Sioux Falls, South Dakota. The body was scheduled for an early morning flight on January 2, 1985, at Kansas City International Airport (KCI) on Republic Airlines at 8:55 a.m., to arrive at Sioux Falls at 1:15 p.m.

Funeral arrangements for a Dorothy Butler who had died December 31, 1984, were also made at McGilley's Overland Park facilities and prayer and visitation services were held on January 1, 1985, although not at the same hour of the day as Dorothy Galvin. The body of Dorothy Butler was also transported to the Midtown Chapel for air shipment preparation for a flight out of KCI on Eastern Airlines at 11:25 a.m., on January 2, 1985.

In accordance with airline procedures, it was necessary for both bodies to be delivered to KCI approximately one to two hours prior to the scheduled flight. Both remains were prepared for air shipment in the early morning hours of January 2, 1986, by Jed Sauvain, the night supervisor at the Midtown Chapel. Jeff Adams, a student employee, assisted in the preparation and was to drive the remains of Dorothy Galvin to KCI. At 5:30 a.m., Adams began to leave for the airport, but before leaving he thought he had the remains of Dorothy Butler rather than Dorothy Galvin and told this to Sauvain who helped him switch the bodies.

Normally, identifying stickers showing the surnames of the deceased are placed in two locations inside the casket, out of sight, during the visitation. One sticker is

moved to the outside of the casket during transportation. Certain in-house documents and burial transit papers accompany the body when transported. In preparing a corpse for air transportation, certain documents are placed in the casket and the casket is strapped on an air tray while encased in heavy corrugated card board. According to the evidence, the name of the deceased is usually, but not always, written on the outside of the crating.

Adams delivered the body of who he thought was Dorothy Galvin at KCI for the flight to Sioux Falls, South Dakota. Kathy Smith, another employee of the Midtown Chapel, came on duty at 8:00 a.m., on January 2, 1985, and delivered the remaining body to KCI for the flight to Norman, Oklahoma. This air tray contained the remains of Dorothy Galvin.

On the evening of January 2, 1985, an informal visitation was arranged for friends and relatives in Sioux Falls. Prior to the visitation, the family was informed the wrong remains had been shipped. Richard Galvin was shown the body at the funeral home and identified it as not being his mother, Dorothy Galvin. Richard Galvin went to a medical clinic from the funeral home to get some medication for his nerves. The visitation took place without the body of Dorothy Galvin. After being notified of the mix-up, Mark McGilley, manager and funeral director of the Midtown Chapel, made arrangements for the delivery of Dorothy Galvin to South Dakota. The remains of Galvin were delivered to the funeral home in South Dakota at approximately 2:00 a.m., on January 3, 1985.

Plaintiffs allege they suffered mental anguish and continue to suffer mental anguish by defendant's conduct in failing to deliver the proper body to Sioux Falls, South Dakota. On appeal from a dismissal of their petition, plaintiffs assert the State of Missouri has the most significant contacts with this cause of action and the substantive law of Missouri should be applied for a determination of the issues.

■ This state adopted the most significant contacts or most significant relationship test in *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo.1969). This doctrine replaced the concept of *lex loci delicti* with a test based on the predominate contacts with the state whose substantive law is to be applied. *Hicks v. Graves Truck Lines, Inc.*, 707 S.W.2d 439, 442 (Mo.App.1986). The contacts to be evaluated according to their relative importance with the issue are:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Kennedy v. Dixon, supra,* 439 S.W.2d at 181.

■ The trial court, apparently relying heavily on the last contact, found Kansas "clearly has the most significant relationship to the occurrence complained of." There is no dispute that the decedent was a Kansas resident; that the defendant, a Texas partnership, is allowed to do business in Kansas, and that the parties did initiate the business relationship in Kansas. We, however, fail to find a state policy which propels this contact to the forefront overshadowing the other contacts.

In this case, the significant facts call for a different emphasis. The focus rests more significantly upon the first two contacts listed under § 145 of the Restatement of Conflict of Laws (Second): the place where the injury occurred and the place where the conduct causing the injury occurred. In the case at bar, the difficulty arises because the conduct and injury occur in two different states. This situation was dealt with in *Kansas City Star v. Gunn,* 627 S.W.2d 332 (Mo.App.1982). In that case, a newspaper company located in Kansas City, Missouri, was sued by a newspaper distributor located in Kansas, whose

delivery route was exclusively in Kansas, for the wrongful and malicious termination of its distribution arrangement. The issue centered on whether the Kansas statute of limitations applied precluding the distributor's action. This court in attempting to determine where the cause of action arose stated, "[w]hile the concept of significant contacts or relationships is a complex subject in the choice of law area, the text writers are generally in agreement that when an act operates across a state line, its legal character is determined by the law of the place where it first takes harmful effect or produces the result complained of." *Id.* at 334. The court found that the application of the Kansas statute of limitations would prevail under the rule of harmful effect buttressed by the fact that the distributor's business relationship was entirely localized in Kansas. *Id.* at 335.

In this case, the place of injury is easily ascertainable. Plaintiffs' injury, that is, the emotional distress, occurred in South Dakota where it first became known there had been a switching of the bodies. South Dakota was the destination for Dorothy Galvin for further funeral services and burial after leaving the McGilley–Hoge facility in Kansas. By comparison the place where the conduct occurred which created the mix-up of the remains is less discernable. The identification of stickers, or lack thereof, on the casket may have occurred in Kansas furthering the employees confusion over the bodies in Missouri.

Assuming *arguendo* that the conduct causing the injury occurred solely in Missouri, the impact of this contact is less significant. Our courts by an insistent judicial policy have confirmed the common law right of sepulchre—the right of the next of kin to perform a ceremonious and decent burial of the nearest relative—and an action for the breach of that right. *Crenshaw v. O'Connel*, 235 Mo.App. 1085, 150 S.W.2d 489, 492 (1941); *Wilson v. St. Louis & S.F.R. Co.*, 160 Mo.App. 649, 142 S.W. 775, 777[2] (1912). The gist of the cause of action, as presently evolved, is the

emotional distress and anguish to the nearest kin from mistreatment of the body. *Golston v. Lincoln Cemetery, Inc.*, 573 S.W.2d 700, 701 et seq. (Mo.App.1978). That essential formulation emerged from the early fiction that the cause of action rested on the infringement of a quasi property right of the nearest kin to the body. *Id.* The mistreatment of the body or the interference with the interment process, under that property right formulation, was a dominant determinant of the cause of action. The anguish of the next of kin was an incident. It is evident from those early cases, however, that the fiction of a quasi property right was mostly the occasion for the recovery of damages for emotional anguish. *Wall v. St. Louis & S.F.R. Co.*, 184 Mo.App. 127, 168 S.W. 257, 259 (1914). *Golston v. Lincoln Cemetery, Inc., supra,* at 705, allows recovery to kin without claim of quasi property in the body of the relative, and hence confirms that the dominant determinant of the cause of action is the mental anguish occasioned by the sight or knowledge of the trespass on the body.

Although the switch did, in all probability, occur in Missouri the distress suffered by the plaintiffs was a product of the discovery of the mistake in South Dakota. If the switch of the bodies had never been discovered no emotional distress would have occurred and thus the plaintiffs would have been foreclosed from using a cause of action based in Missouri law. The rule of harmful impact as defined by Missouri courts precludes such a result and thus the law of South Dakota applies.

■ The Supreme Court of South Dakota, in its most recent pronouncement on the subject, adopted in *Chisum v. Behrens*, 283 N.W.2d 235, 239–40 (S.D.1979), the position of the Restatement (Second) of Torts, § 868, and the majority view, that liability for emotional distress for the mishandling of a dead body does not exist under a standard of negligence absent physical injury; the proof must show the act was intentional or malicious to recover. As such, plaintiffs' cause of action may not be

592

recognized under the substantive law of South Dakota.

The trial court's decision granting summary judgment in favor of defendants is affirmed.